YARNALL v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAIL-
WAY COMPANY, *Appellant.*

1.  **Instructions as to Negligence.**  In an action grounded upon negligence, the better practice is for the court, by appropriate instructions applicable to the facts in evidence in the case, to tell the jury whether these facts, if they find them to exist, do or do not constitute negligence.    An instruction is erroneous which leaves the whole question of negligence to the jury without any qualification whatever.

2.  **Plaintiff's Contributory Negligence: DEFENDANT'S NEGLIGENCE.**

| | |
|---|---|
| 75 | 575 |
| 96 | 280 |
| 31a | 115 |
| 75 | 575 |
| 35a | 579 |
| 75 | 575 |
| 41a | 298 |
| 75 | 575 |
| 48a | 230 |
| 75 | 575 |
| 115 | 302 |
| 75 | 575 |
| 124 | 288 |
| 75 | 575 |
| 126 | 278 |
| 75 | 575 |
| 152 | 344 |
| 75 | 575 |
| 68a | 661 |
| 70a | 399 |
| 75 | 575 |
| 78a | 256 |
| 75 | 575 |
| 159 | 278 |
| 75 | 575 |
| 93a | 2554 |

576 SUPREME COURT OF MISSOURI,

Yarnall v. The St. Louis, Kansas City & Northern Railway Company.

When the plaintiff is guilty of contributory negligence, the defendant will be liable only for such negligence on his part as occurred after he became aware of plaintiff's exposed condition. See *Swigert v. Hann. & St. Jo. R. R. Co., ante,* p. 475.

3. **Railroads**: PEDESTRIANS ON THE TRACK. The servants of a railroad company operating its trains in the country at night have a right to assume that the track is clear, and are under no obligations to provide for the safety of persons who may be on it. Even if they know the track is used as a foot-path, this will not exonerate any one so using it from the duty of taking proper care to avoid injury.

4. **The Evidence** in this case shows the plaintiff's husband, for the killing of whom this action was brought, to have been guilty of gross negligence directly contributing to his death and forbidding plaintiff's recovery.

*Appeal from Clay Circuit Court.*—HON. GEORGE W. DUNN, Judge.

REVERSED.

*Wells H. Blodgett* for appellant.

*J. E. Black, James W. Black, James L. Farris* and *Adam J. Barr* for respondent.

RAY, J.—This action was commenced by plaintiff, as the widow of Richard Yarnall, under the 2nd section of the Damage Act, to recover the statutory penalty of $5,000 for causing the death of her husband.

The material parts of the petition are as follows, to-wit: That defendant was a railway corporation duly organized under the laws of the State of Missouri; that defendant was, on the 2nd day of July, 1875, owning, controlling and operating a railroad known as the St. Joseph & St. Louis Railroad, which began at a point in Ray county, opposite the city Lexington, and extended through the county of Ray to the city of St. Joseph. The petition also contained the following averments: "That on the 2nd day of July, 1875, defendant, by its agents and employes, negligently and unskillfully did back one of its locomo-

tives, with a tender in advance, from Richmond to Richmond and Lexington Junction, in Ray county; that, by reason of negligence and unskillfulness of the agents and employes of defendant, at the time aforesaid, and at a point on the railroad aforesaid about one-half mile north of the Richmond and Lexington Junction, in Ray county, in running its said locomotive and tender as aforesaid, the said Richard Yarnall was struck, run upon and over by said tender and locomotive, and bruised, wounded and mangled and instantly killed thereby." The petition also averred that the plaintiff was the widow of Richard Yarnall, deceased, and prayed for judgment in the sum of $5,000.

The defendant, in its answer, denied that it did, on or about the 2nd day of July, 1875, by its agents, servants or otherwise, negligently or unskillfully back a locomotive and tender from Richmond to Richmond and Lexington Junction in Ray county; denied that, by reason of negligence or unskillfulness on the part of its agents or employes, the said Richard Yarnall was, at a point about a half mile north of said Junction, run upon or over by defendant's locomotive or tender and thereby killed. For other and further answer, defendant stated that deceased was, at the time of his death, wrongfully upon defendant's track; that he was not in the exercise of prudence to avoid danger; that the point where he was alleged to have been killed was in the country, and not in the street of a town or city, or at the crossing of a public highway; that said Yarnall was guilty of such negligence as was the proximate cause of his death; and denied that the death of Yarnall was caused by his being run over by any locomotive or tender of defendant on its railroad.

The replication denied the new matter set up in the answer.

The testimony, together with the admissions made upon the trial, show that in the year 1875 defendant was operating a railroad commencing at a point in Ray county

37 - 75

known as North Lexington, and extending in a north-westerly direction to the city of St. Joseph in Buchanan county; that on the line of the above named railroad and some nine or ten miles northwest of North Lexington, is situated the town of Richmond in Ray county, and that about midway between North Lexington and Richmond the railroad to St. Joseph is crossed by the main line of defendant's railroad, which extends from St. Louis to Kansas City. At the point where said tracks cross each other there is a depot and a village known as Richmond and Lexington Junction. North of Richmond and Lexington Junction, some two and a half miles up the track, in the direction of Richmond, there were some coal mines, in which Richard Yarnall, the deceased, worked as a miner, and near which he resided and kept a boarding house.

From the testimony introduced on both sides at the trial, it appears that during the afternoon of July 2nd, 1875, the deceased was about the Junction drinking beer, and that toward evening he started up the railroad track, toward his home, in a state of intoxication, carrying on his back a sack containing some meat and groceries. As he started off up the track toward home, he was seen to stagger, and before it got fully dark he was seen for the last time half a mile up from the Junction, still going in a northerly direction, and at that time he seemed to be having some trouble in keeping the sack on his shoulder. On the same night after nine o'clock, the dead body of Yarnall was found between the rails of the railroad track, half a mile north of where he was last seen. The body when found had the appearance of having been run over by the cars, and was lying between the rails, near where the defendant's track was at that time crossed by a sort of neighborhood road leading in the direction of a mill and the coal mines. From the blood and other marks upon the ground, ties and iron rails, it was evident that the deceased had been struck some distance north of the crossing, and that

the body had been dragged or rolled along down to the crossing, where it was found.

In backing down, the head-light at the front of the engine was burning brightly. The gauge lights in the cab were lighted and a watchman sat on the rear end of the tender, holding in his hand as a signal, what is known as a white light, or common railroad lantern. The testimony shows that the rays reflected to the sides of the track from the head-light of the engine, the gauge lights in the cab and the lantern at the rear, could each be seen by a person upon the track (if he looked) a quarter of a mile; and that the noise of an engine and tender running on a track in the night-time, could be heard a much greater distance.

The circumstances all indicated that the deceased was struck by an engine or train going south from Richmond to the Junction. Blood and brains were to be seen upon the rails and upon some piles of ties which were near the track, but no blood or marks of any kind could be found upon the wheels or other portions of the engine that was backed down on the night in question from Richmond to the Junction. No one upon that engine saw anything upon the track, felt any unusual jar, or was aware of an injury to any person until after the body was discovered, and they learned of the accident hours afterward from persons at the Junction. It was not only established by the evidence of witnesses introduced by both parties, that the deceased was drunk when he left the Junction and started up the railroad track toward his home on the evening of his death; but it was also shown that he was in the habit of getting drunk and sitting down or lying down upon the street, sidewalk or railroad track, wherever he might, at the time, happen to be.

At the close of plaintiff's testimony, defendant interposed a demurrer to the evidence, but the court overruled it and defendant excepted. At the close of the whole testimony the court, over defendant's objection, gave the following instructions for the plaintiff:

1.   If the jury believe from the evidence that, on the 2nd day of July, 1875, Richard Yarnall was run over and killed by the locomotive and tender of defendant upon the St. Louis & St. Joseph Railroad, while said railroad was run and operated by defendant, in Ray county, by reason of negligence or unskillfulness of the agents, servants or employes of defendant in running and managing said locomotive and tender, and further find that plaintiff is the widow of said Yarnall, then the verdict should be for the plaintiff, unless Yarnall was at the time guilty of negligence which contributed to or caused his death.

2.   Although the jury believe from the evidence that Yarnall was guilty of negligence at the time he was killed, by being upon the railroad of defendant; yet if they further believe that the agents, servants or employes of defendant, by the exercise of care and skill, could have prevented the killing of said Yarnall, and that his death was caused by the carelessness, negligence or unskillfulness of defendant's agents, servants or employes, and that plaintiff is his widow, the verdict should be for plaintiff.

3.   If the jury find the issues for plaintiff, they will assess the damages at $5,000.

The court gave the following instructions for defendant, to-wit :

1.   Defendant had the right to the exclusive use of its own railway track, to run and operate its cars, engines and locomotives thereon at any time, either in the day or night-time, and either backwards or forwards, and if the jury find from the evidence that the employes of defendant used ordinary care in backing its engine and tender at the time, and along the track where the injury complained of occurred, then the jury must find for defendant.

2.   The burden of proof is on the plaintiff, and to entitle her to recover she must prove to the satisfaction of the jury, by the preponderance of the evidence, that her husband was killed by the negligence or unskillfulness of the employes of defendant in running and managing the locomotive of defendant, and that he was not at the time

guilty of any negligence which directly contributed to the cause of his death.

3. Although the jury may believe from the evidence that the persons in the charge of defendant's engine were guilty of negligence in running said engine, yet if they further believe from the evidence that Yarnall was guilty of any negligence that directly contributed to produce. his death, then plaintiff cannot recover.

Among other instructions asked by defendant, and refused by the court, are the following, to-wit:

4. Under the pleadings and evidence, plaintiff is not entitled to recover, and the finding must be for defendant.

5. Defendant had the legal right to the use of its own track, and the right to run and operate its locomotives and cars thereon, at any time either in the day or night-time, and either backwards or forwards, and the employes of defendant were under no obligations to presume that any person would be on said track at the time and place where said killing occurred, and if the jury find from the evidence that Yarnall, while intoxicated, was on the track of defendant's road, either walking, sitting or lying on said track, and that he was not seen by those operating the train, in time to avoid the injury, then the jury must find for defendant.

6. If the jury believe from the evidence that from the point on defendant's track, where Yarnall was run over, there was a plain view of the approaching engine and tender. and that, by the exercise of ordinary care and prudence, he might have seen or heard said engine and tender approaching, and could by ordinary care and prudence have avoided said engine and tender, then the jury must find for defendant. The ordinary care and prudence required of Yarnall was the exercise of such care and prudence as was proportioned to the danger to be avoided.

12. If the jury believe from the evidence that Yarnall was, a short time before he was killed, in a state of intoxication, and in such a condition went upon defend-

ant's railway track for the purpose of walking home thereon, and laid himself down or fell down upon the track, and was run over and killed by the engine or tender, then they must find their verdict for defendant, unless they further find from the evidence that defendant or its servants in charge of the engine and tender, had knowledge that he was on the track in time to prevent the accident.

13.   Although the jury may believe from the evidence that coal miners and parties in the neighborhood were in the habit of walking along defendant's track at the place of the accident, and that defendant or its servants were aware of that fact, the plaintiff's husband, nevertheless, had no right to walk thereon, and if the jury believe from the evidence that Yarnall had gone on defendant's railway track for the purpose of walking home thereon, then they are instructed that while on the track it was his duty to vigilantly employ his senses in looking out for the approach of engines and cars, and if the jury believe from the evidence that while on the track he failed to use his senses in looking out for the engine and cars, and in consequence of such failure to use his senses he was run over and killed, then they are instructed that the plaintiff cannot recover, and the verdict must be for defendant.

·   The defendant duly excepted to the refusal of these instructions.

Under the instructions given the jury found for plaintiff and assessed damages at $5,000.   After an unsuccessful motion for a new trial, the defendant brings the case here by appeal.

As the decision of this case, from the view we have taken of it, depends upon the action of the court in giving the first and second instructions for the plaintiff; but more especially in refusing the fifth and twelfth and the sixth and thirteenth instructions asked by the defendant, we deem it unnecessary to notice the other instructions and rulings of the court; or to give any fuller statement of the

evidence, than as stated above; or as may appear in the progress of this opinion.

Conceding that the first and second instructions for plaintiff, where there was sufficient evidence in the cause *1. INSTRUCTIONS AS TO NEGLIGENCE.* on which to base them, might be proper enough as far as they go; but taken by themselves, they are subject to the objection of referring the whole question of negligence, or care, entirely to the jury, without any qualification whatever as to what constitutes negligence or care in the given case. What constitutes negligence or care, as we all know, is a question of law for the court. Whether it exists in the given case is a question of fact for the jury. Usually, and especially in a case like this, it is believed to be the better practice for the court, by appropriate instructions, applicable to the particular facts of the case in evidence and on trial, to tell the jury whether these facts, if they believe them to exist, do or do not amount to negligence or care.

It is proper also, here to remark, that the second instruction for plaintiff is erroneous for another reason, to-*2. PLAINTIFF'S CONTRIBUTORY NEGLIGENCE: defendant's negligence.* wit: The defendant's liability should have been limited to negligence or want of care after its servants became aware of Yarnall's exposed position, if indeed they did so become aware of his exposure to danger.

Whether there was sufficient evidence in this cause, on which to base these instructions, we think extremely doubtful; but conceding that there was, we are clear that they should at least have been qualified and explained by the fifth and twelfth and the sixth and thirteenth instructions asked by the defendant, or the substance of them; and that their refusal was manifest error. They announce the true doctrine applicable to a case like this, and are fully sustained by numerous decisions of this court heretofore made, to say nothing of the adjudications of other courts on the same subject. *Maher v. A. & P. R'y Co.*, 64 Mo. 267; *Zimmerman v. Hann. & St. Jo. R. R. Co.*, 71 Mo. 476;

*Isabel v. Hann. & St. Jo. R. R. Co.*, 60 Mo. 475; *Hallihan v. Hann. & St. Jo. R. R. Co.*, 71 Mo. 113; *Karle v. K. C., St. Jo. & C. B. R. R. Co.*, 55 Mo. 476; *Fletcher v. A. & P. R'y Co.*, 64 Mo. 484; *Harlan v. St. L., K. C. & N. R'y Co.*, 65 Mo. 22; *Harlan v. St. L., K. C. & N. R'y Co.*, 64 Mo. 480; *Hicks v. Mo. Pac. R'y Co.*, 65 Mo. 34. This accident occurred in the open country, where the defendant had the exclusive right of way, and was under no obligation to anticipate the presence of any one, or provide for their safety. It happened also in the night time, and the evidence wholly fails to show how it took place, or by which of the trains the deceased was run over and killed: or in what particular, if any, the defendant was negligent.

But concede that the defendant may have been guilty of negligence in some particular, yet there is abundant evidence that the plaintiff's husband was guilty of gross negligence directly contributing to his death; and in all such cases it is clear that no recovery can be had. The above authorities abundantly sustain this position.

Concede also, that the evidence shows that the coal miners and others were in the habit of walking on defendant's track between Richmond and Lexington Junction, and the coal mines, where this accident occurred, and that the defendant's agents were aware of that fact, still, that fact, if so, would not exonerate the plaintiff's husband, while walking on said track, from the duty of exercising proper care to avoid the injury; and if he failed to do so, and thereby directly contributed to his death, no recovery can be had.

3. NEGLIGENCE: pedestrians on the track.

The testimony shows that defendant's trains, regular, special and extra, were accustomed to run backward and forward over its track between the Junction and Richmond, at almost all hours during the day and night; that two or three regular trains passed over the same every evening at intervals between six and nine o'clock; and that the engine and tender, also, were accustomed to pass and repass very frequently of nights for re-

4. THE EVIDENCE.

pairs and otherwise. It also appears that the deceased, for some considerable time, had lived at the coal mines, and was accustomed to pass and repass, up and down said road between the two places, and was presumably familiar with these facts, and this state of things. The testimony further shows that the deceased, on the evening of the accident and just before most of the regular trains for that evening were due and expected, in a state of intoxication, and staggering, started up the railroad track; and that, at the place where his dead body was found about half-after nine o'clock that night, the railroad was both straight and level for at least a quarter of a mile, both ways; and that there was nothing to prevent deceased from seeing or hearing an approaching train, or to prevent him from getting off the track in time to avoid injury, if he had been sober, or awake, or in the exercise of ordinary care for his personal safety. Under such circumstances, the conclusion is almost irresistible, that the deceased from extreme drunkenness, had either fallen or laid down on the track in a state of stupor or drowsiness, and was thus run over and killed by some one of the passing trains, without having been seen in the darkness by those in charge of the train. Under such circumstances it is difficult to see how the defendant can be charged with negligence; whilst it is quite evident that the deceased was manifestly guilty of such contributory negligence as will prevent a recovery.

It may here be remarked, also, that the views herein expressed are not in conflict with those contained in the recent case of *Lulu Frick v. St. L., K. C. & N. R'y Co.*, decided by this court at the October term, 1881.* There the accident occurred in broad-day-light, in the suburbs of a crowded city, where care and caution, proportionate to the apprehension of danger, is held to be required; and the plaintiff therein was an infant, to whom contributory negligence is not imputable. Here, the injury happened

*See *post*, p. 595.

in the night-time and in the open country, where the defendant had the exclusive right of way, and was under no obligation to anticipate the presence of any one, or to provide for their safety; and the injured party therein is an adult, who is shown by the testimony to have been guilty of gross negligence, contributing directly to his death. The two cases being thus essentially different, in all the elements of time, place and circumstances, as well as in the character and capacity of the sufferers, or actors therein, have been deemed and held to confer different rights, and impose different obligations, and, therefore, governable by different rules, as indicated in the two opinions. For the reasons above stated, the judgment of the trial court is reversed. All concur.