Robinson, J.
This is a suit brought by plaintiff against the defendant, a corporation operating a line of street railroad in the city of St. Louis with electric power, to recover for personal injuries, alleged to have been received in the city of St. Louis while a train of cars running around a curve near Ninth street and Russell avenue in that city, by reason of the plaintiff having been thrown from the train as the train passed around said curve. The first count of plaintiff’s petition is as follows:
‘ ‘And plaintiff then and there sustained asevere concussion of the brain, and a severe laceration of the scalp, of which a large portion was cut and torn loose from his head, and also sustained a fracture of the bones at the base of the skull, and of the bones of the eardrum, a laceration of the right ear and bursting of the drumhead of the right ear, and a severe shock to his system, and loss of consciousness, which injuries caused bleeding of the ear, nose, eustachian tube and scalp, delirium, nervous prostration, total loss of hearing in the left ear and a permanent injury to the hearing and condition thereof, and injury to his brain, and by these injuries plaintiff sustained and suffered great mental and bodily pain and anguish and suffering from hence hitherto; and his mental and bodily health are permanently injured, and his ability to work and attend to business is greatly impaired, and he is subject to dizziness and loss of consciousness therefrom, and *398 is unable to attend to business with the same degree of force, energy and persistency that he could before receiving said injuries.”
The statement of the injuries in the second count is, with slight change of verbiage, substantially the same. The answer is a general denial, with allegations of contributory negligence.
The accident occurred late in the evening of October. 6, 1891; it was during fair week and travel upon the road was unusually heavy; • a slight rain was falling and the rails were damp "at the time. Down Russell avenue, toward Ninth street, the track runs on a steep descending grade and at Ninth street it turns on a curve into said street and proceeds northwardly along Ninth street at’right angles with the course pursued on Russell avenue; the curve is at the foot of a steep descent and connects the tracks upon these intersecting streets. The evidence of the plaintiff tended to show that the train in question came down Russell avenue at a rate of speed estimated to have been sixteen to thirty miles an hour, and that the train running into the curve at this speed, threw plaintiff off the rear platform of the motor car with great force and violence.
The evidence of the defendant tends to show that the car ran into the curve with unusual force, but the train was not moving at a rate of speed in excess of twelve miles an hour, that the cars and their equipments were all in first-class condition, but owing to the wet tracks, and the unusually heavy load, the wheels slid along the' track when the brakes were applied, and that the fuse blew out so that the employees in charge of the train were unable to check it and bring it down to the usual and proper speed for entering the curve.
On the trial of the case and toward the close of *399 plaintiff’s testimony, the plaintiff called three witnesses, who were expert physicians, and attempted to prove by their testimony that, as a result of his injuries, plaintiff had become an incurable epileptic. The defendant objected to this testimony on the ground that nothing in the petition gave it any warning that epilepsy would be claimed as a result of plaintiff’s injuries, or that proof upon that issue would be offered, and that such testimony was outside of the issues in the case. The court, however, overruled defendant’s objection. At the close of plaintiff’s testimony, defendant filed an affidavit of surprise, and asked the court to continue the case so as to allow thé defendant time to prepare to meet this new issue with testimony. This application the court overruled.
The defendant then offered the testimony of several witnesses to prove the train could not have been moving at the rate of speed testified to by plaintiff’s witnesses and still remain on the track in going around the curve. These witnesses were expert railroad men who had worked for years upon steam railroad. The defendant stated to the court that such testimony was offered as bearing upon the issue as to the rate of speed with which the train entered the curve at the time and place of the accident. The plaintiff objected to this testimony on the ground that as the question related to street railroads, it was not admissible and the court sustained the objection over defendant’s exception.
At the time the expert evidence was offered by the plaintiff to support his contention that the injuries had made him an epileptic the trial continued until 9 o’clock at night, and commenced again early next morning and was concluded at half past 11 A. m., and then it was that the affidavit of surprise was filed by the defendant.
*400 After the charge to the jury, one of the attorneys for the plaintiff in making his speech to the jury, used the following language: “Gentlemen of the jury, this man, Young, is a suborned witness. What is he doing here, if he was not paid to come here and testify?” Defendant’s counsel objected to this language and asked the court to administer a rebuke to counsel for plaintiff for using the same, and the.court responded by saying “counsel should keep within the record.”
The jury returned a verdict for $6,750, from which, after a motion for new trial had been filed and overruled, the defendant appealed to this court.
Four assignménts of error are made by the defendant as ground for reversal of the judgment of the lower court. First, the error of the court in excluding testimony of experts; second, the refusal of the court to continue the case on the ground of' surprise at the close of the plaintiff’s testimony; third, on the ground that the damages are excessive; fourth, the improper remarks of counsel for plaintiff in addressing the jury. We will discuss the assignments of error in the order as set out in defendant’s brief so far as a discussion is necessary for the determination of this case.
Conceding the testimony of Wachof and others was proper and competent, and that from their experience as railroad men they could and would have stated what, in their judgment, was the greatest possible rate of speed these electric cars could have gone around the curve oh Eussell avenue, on that night, under the condition of the track, weather, etc., and that they were denied the right to so testify, it is no ground for the reversal of the judgment rendered herein. The witness E. F. Hammond, corroborated substantially by two other witnesses for defendant, testified that it would be impossible for a car to run into that curve faster than fourteen or fifteen miles an hour without jumping the *401 track, and no witness for plaintiff testified as an expert to the contrary, but gave it merely as their judgment from the motion of the train as they saw and observed it at the time that it was running at the rate of from sixteen to thirty miles an hour as it struck the curve. At most, the testimony offered was merely cumulative, and, if competent, would not warrant a reversal of the judgment on account of its rejection by the court. In view of the undisputed facts of the case, and of the contention on the part of defendant, we think the testimony of Wachof and others of no consequence.
Defendant admitted that the car ran into the curve with unusual force, but denied that it at any time moved at a rate of speed exceeding twelve miles an hour, and undertook to account for the unusual force and speed with which the train struck the curve by the intervention of causes not to be anticipated or prevented, and it made proof showing that the track was wet, that the cars were unusually heavily loaded, owing to the great crowds then visiting the city, and that the wheels slid upon the track when the brakes were applied and that the fuse blew out so that the officers in charge of the cars were unable to check the speed of the train to its usual and proper rate on entering the curve. The speed of the train was admittedly improper. Whether, then, it was running twelve or thirty miles an hour was of no consequence to defendant in this action, if by that improper speed plaintiff was thrown off its cars and injured.
Appellant’s next assignment of error was the refusal of the trial court to grant to it a continuance of the case, at the close of plaintiff’s testimony, on account of surprise, by reason of the admission of testimony on behalf of plaintiff, against its objection, tending to show that plaintiff had suffered, as a result of said injury, epilepsy, and had become an incurable epileptic, *402 claiming that there was nothing in the petition to notify it of any such injury charged, or that it had knowledge of any kind from any source that plaintiff had or claimed to have epilepsy, and that by reason thereof it was surprised and wholly unprepared to make defense against such claim.
While continuances or new trials on affidavits of surprise are not looked upon with much favor by the courts, where there is a clear case of surprise and the party complaining is wholly free from negligence, so that without the interposition of the court injustice would be done, a continuance should be granted or a new trial awarded. It is a condition precedent to the relief sought, however, that the applicant should himself be blameless, otherwise a premium would be offered for inefficiency and carelessness, and, further, the court granting the relief must first be satisfied that a different result would likely ensue on a second trial by some showing made that testimony could and would be produced at the new trial rebutting the opponent’s case. Applying these rules to the application for continuance made herein by defendant and what have we as a basis for the reversal of the action of the trial court?
Defendant made no affidavit showing that plaintiff’s testimony was false, or could be rebutted, or that it expected to be able to get witnesses who would in any wise testify to a single fact to militate against the existence of the condition and symptoms testified to by plaintiff’s witnesses, or that physicians that he might be able to produce, would give to the symptoms as described by the witnesses any other diagnosis than those who testified in favor of plaintiff, or that they were in any wise incompetent as experts, or biased or impartial witnesses. Why grant a continuance, or why, after judgment, a new trial, on account of evidence to which there is not a showing of counter evidence made? *403 But had the defendant the right to claim a surprise from testimony showing epilepsy, under the petition filed herein?
Graham & Waterman on New Trials define surprise in practice to he: “That situation in which a party is unexpectedly placed without any default of his own, which will be injurious to his interest.” In what unexpected situation did defendant find itself placed by reason of the proof of epilepsy? The petition in this case is close, careful and specific, reciting the original severe shock, concussion of the brain and reduction to unconsciousness, the bursting of the drum-head of the ear, the fracture of the bones at the base of the skull, and of the lower part of the' ear-drum, injury to the brain, permanent injuries to the health and his being subject to dizziness and loss of consciousness, inability to attend to business and a claim of damages for said injuries and such resulting conditions, $15,000. Here, injuries are charged which frequently result in epilepsy, and conditions and symptoms of the malady are named and set out with clearness. The injuries and the symptoms of the patient being proven, hypothetical questions based thereon are then put to physicians or experts to ascertain to what they consider the injuries due, and what the name and character of the malady as indicated by the symptoms described and proven. We do not think that defendant can be heard to say that he is surprised, unless he make some showing that the answers as given are not such as could be expected from scientific men on that subject, and that, by giving further time, or, after judgment, by granting a new trial, he would be able to show that the conditions and symptoms named do not indicate epilepsy. Defendant did not so state in his application for a continuance, and, so failing, the court properly denied to him the delay asked.
*404 Again, the character of witnesses desired by defendant and for which it asked the continuance, are so numerous in the land that a continuance on the grounds of that alone is suspicious. Here no individual witness is needed, none necessary. Scientific men to answer hypothetical questions is all that is asked for, and yet, in the prosperous county seat of Clayton where the trial was being conducted, and the city of St. Louis, within an hour’s drive, where there were hundreds of skilled physicians eager for the opportunity to publish to the world their scientific views, and none called, is a suspicion against the sincerity of the application.
Defendant next assigns as error the refusal of the circuit court to set aside the verdict on the grounds that the damages assessed by the jury are excessive. ¡.There was testimony given tending strongly to the conclusion that, as a result of the injuries received by plaintiff in the fall from defendant’s car, he had become permanently injured in body and mind and is a physical and mental wreck, unable to do work of any kind as in former years and that previous to the accident he was a strong and vigorous young man earning in his business $1,800 per year. That in addition to his actual suffering and injuries from symptoms and conditions described, he is liable to be subject through all after life to the dreadful malady of epilepsy, that knows no cure, and is a constant dread to all accursed by it. His present and his prospective suffering are such that we can not say there was any indication of prejudice or passion in the minds of the jury in assessing the amount of damages they named, and we will not disturb the judgment for that reason.
Defendant assigns as fourth ground of error the failure of the trial court to grant to it a new trial on account of improper remarks alleged to have been made by counsel for plaintiff in his closing address to *405 the jury Unless there has been a manifest abuse of discretion by the trial court resulting to the injury of appellant, this court will not interfere. While this court might not at all times be willing to give its sanction or approval to the language of counsel used before the trial jury, in their ardor and enthusiasm for success, we will be slow to say that we will reverse the action of the trial court and order a new hearing of a cause, otherwise properly tried, when the court had witnessed the whole drama of the trial, and is acquainted with all its actors, knows their respective surroundings and the positions of the parties one to the other, and has heard the side remarks of witnesses to attorneys and the cross-firing of attorneys during the progress of the trial, and oftentimes during the argument, and is acquainted with all the cause and provocation of the remarks made, has denied the same after a full review of the objection on motion for new trial. To tell the effect upon the jury of this or that epithet, invectives, sarcasm or denunciation that may be used by opposing counsel during the course of argument, the trial court, as a rale, is better- prepared than we, and unless manifest prejudice has been done, this court will not interfere.
In this case counsel for plaintiff in commenting on the testimony of witness Young, who was called by plaintiff, said, “Gentlemen of thequry, this man Young is a suborned witness, and what is he doing here if he was not paid to come here and testify.” Young testified that he was on the platform of the car at the time of the injury and detailed his version of the occurrence. Two other witnesses, called for plaintiff, testified to facts which, if true, would make it a physical impossibility for Young to have been where he claimed he was on the car at the time of the accident, and otherwise contradicted Young as to the how and manner of the occurrence, and the attorney for plaintiff in arguing *406 these facts from his standpoint said that this' man Young is a suborned witness and asks the jury 11what he is doing here if he is not paid,” etc. A simple statement of a conclusion by the attorney, from the facts as he viewed them, put as a question to the jury (asking from them a confirmation of his conclusions) and not an independent charge made by the attorney of perjury, or subornation of perjury, as he knew it as a witness or as one speaking to influence them independent of the facts that had been detailed by witnesses before them, and which he was discussing.
Counsel had a right to argue that what his witness testified to was true, and that Young was not there on the car at the timé plaintiff received his injury, and that, as a consequence, his testimony was false. Counsel have the right in the interest of their clients to argue to the jury, untrammeled by fear, unmolested by courts, and uninterrupted by opposing counsel, every fair inference deducible from the evidence that has been developed during the progress of the trial for or against his client. Straus v. Railroad, 86 Mo. 421; Loyd v. Railroad, 53 Mo. 509; Sidekum v. Railroad, 93 Mo. 400; Huckshold v. Railroad, 90 Mo. 548. Nor are attorneys to be confined to inferences at all times that the court must say are logical, nor to facts that the court must first indorse as proven. The counsel may assume in his argument that all facts testified to by his witness are proven, and" may draw from those facts inferences that may oftentimes appear to the court very far fetched and illogical, if given as inference and not made as independent declarations of facts of his own asserting. Thompson on Trials, sec. 983; Sears v. Street Railway Co., 33 Pac. Rep. 389.
In this case, however, it could have been said to defendant’s last assignment of error, that there was no ruling of the trial court adverse to it, to which an excep *407 tion could be saved. When defendant, through its counsel, made an objection to the remarks of the counsel for plaintiff above referred to, the court sustained the objection and admonished the attorney in these words: “Counsel should keep within the record.” No exception was then taken to the manner of the admonition or to the insufficiency of same as is now complained of by defendant in its brief, and none being taken at the time, under our practice, we must deem the same as having been waived. We think no sufficient reason is shown on this ground for disturbing the judgment of the trial court. Judgment of the circuit court will be affirmed.
Brace, O. J., Macearlane, J., concur. Barclay, J., not sitting.