THEODORE EARL RILEY, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 1, 1897.

1. **Negligence**: TRESPASSER: RAILROADS. A railroad company owes a trespasser upon its track the only duty of not wantonly or carelessly injuring him.

2. ———: RAILROADS: DANGEROUS POSITION: PRESUMPTION. A railroad is liable for want of care after it discovers the dangerous position of a person on its track; however, in such case the presumption is that an adult person will leave the track before he is overtaken, while with a child of tender years, or person plainly exhibiting indiscretion, such presumption does not arise.

3. ———: INFANT: RULE: JURY QUESTION. There is no arbitrary rule fixing the age when a child may be declared wholly capable or . incapable of understanding and avoiding danger. He is not negligent if he exercises care which could reasonably be expected of one of his years; and whether he uses such care is for the jury. *Barney v. R. R.*, 126 Mo. 372, distinguished.

4. **Appellate and Trial Practice:** REMARKS OF COUNSEL: HARMLESS. Although the remarks of counsel are improper, yet, if promptly rebuked by the court and withdrawn by the counsel, they may be considered harmless; and it is only where they are manifestly prejudicial that the appellate court will interfere under such circumstances.

*Appeal from the Pettis Circuit Court.*—HON. RICHARD FIELD, Judge. ·

AFFIRMED.

· *Wm. Shirk* for appellant.

(1) It stands admitted both in plaintiff's petition and instructions that plaintiff was a trespasser, and it therefore follows that the defendant's servants in charge of the engine which injured him owed him but one duty, namely, not to wantonly or purposely run over him, and to use reasonable care and effort not to injure him after they saw him in a position of danger. *Barker v. R'y*, 98 Mo. 50, and authorities cited by Judge Black on page 53; *Williams v. R'y*, 96 Mo. 275; *Rine v. R'y*, 88 Mo. 392; *Harris v. R'y*, 40 Mo. App. 255; *Lenix v. R'y*, 76 Mo. 86; *Malloy v. R'y*, 84 Mo. 270. And this regardless of his age. *Barney v. R'y*, 126 Mo. 372. (2) It likewise stands admitted, that he was trespassing in defendant's private yards, and in a most dangerous place. It was therefore the plaintiff's duty to observe the utmost vigilance and care for his own safety. Not only was he bound to use his

ears, but his eyes as well, and be constantly on the lookout for engines or cars moving through the yards. *Loring v. R'y*, 128 Mo. 349, 359; *Gurley v. R'y*, 104 Mo. 211, 226; *Henry v. R'y*, 113 Mo. 525, 535, 536; *Loeffler v. R'y*, 96 Mo. 267; *Carroll v. R'y*, 107 Mo. 653; *Dlauhi v. R. R.*, 105 Mo. 645; *Powell v. R. R.*, 76 Mo. 80, 82, 83. And this duty was a continuing one. *Kelsay v. R. R.*, 129 Mo. 362, 372. (3) And he admits himself that he did not look to see if any car or engine was coming toward him on the track, when the merest glance backward or to the right, would have discovered to him the engine approaching near at hand—would have advised him of his danger, and would have enabled him to avoid being injured. A more flagrant case of contributory negligence can not be found in the books. *Hayden v. R. R.*, 124 Mo. 566; *Loring v. R'y*, 128 Mo. 349; *Kelsay v. R'y*, 129 Mo. 362; and the older Missouri authorities cited and reviewed in above cases. *Watson v. R. R.*, 34 S. W. Rep. 573, 574; *Culbertson v. R. R.*, 36 S. W. Rep. 834. (4) And defendant's engineer was not bound to take notice that plaintiff would attempt to cross the track, merely because he was running alongside of it. *Williams v. R'y*, 96 Mo. 275; *Boyd v. R'y*, 105 Mo. 371, and cases cited by Judge Brace, on p. 379; *R'y v. Herrin*, 26 S. W. Rep. 425, 428; *Purl v. R'y*, 72 Mo. 168, 172. And even had he seen him on the track, he had a right to presume that he would use his eyes, see the engine and get off the track out of its way, and the engineer was not bound to use any precautions to avoid striking him, until he saw that plaintiff neither saw nor heard the engine coming, and was in danger of being struck by it. *Yancy v. R'y*, 93 Mo. 432; *Boyd v. R'y*, 105 Mo. 371, 381; *Malloy v. R'y*, 84 Mo. 270. (5) This is not a case where the defendant's engineer might have seen

the plaintiff by the exercise of due care, in time to have avoided injuring him. It is a case where he must have actually seen the plaintiff in a position of danger in time to have stopped his engine before striking him. There is no evidence that he did so see him. It is all to the contrary. Even the plaintiff's rebutting evidence fails to contradict him on this point. See authorities *supra*, and admissions of plaintiff's petition and instructions. And it will not be contended that it was the duty of defendant's servants to ring the bell or sound the whistle, while running its engine through its yards. This is only required when approaching public crossings. *Bell v. R. R.*, 72 Mo. 50, 58; *Dahlstrom v. R. R.*, 96 Mo. 99; *Gurley v. R. R.*, 104 Mo. 211, 225; *Rosenberg v. R. R.*, 15 Am. and Eng. Railroad Cases, 448. And can not be invoked by others. Note to above case on page 459, and authorities there cited.

(6) The remarks of plaintiff's attorney to the jury, in which he told them that the court had ruled as a matter of law, that plaintiff had made out a good case, were necessarily prejudicial to defendant's rights. And the reproof of the court, and the withdrawal of the remarks by counsel did not, and could not, have counteracted this prejudice. The withdrawal of the remarks simply amounted to saying to the jury: "I had no right to tell you that the judge had ruled that we had made a case, and I now ask you to disregard what I said, but I still assert that the court did so rule." *Wilburn v. R'y*, 48 Mo. App. 224, 231–233; *McDonald & Co. v. Cash*, 45 Mo. App. 66; *Evans v. Trenton*, 112 Mo. 390; *Smith v. Telegraph Co.*, 55 Mo. App. 626. Even if counsel for appellant exceeded the limits of legitimate argument, that would not justify improper remarks by respondent's counsel. *McDonald v. Cash*, 45 Mo. App. 66; *Ensor v. Smith*, 57 Mo. App. 584, 592, 593.

*Montgomery & Montgomery* and *Sangree & Lamm* for respondent.

(1)   In the standard work on negligence in this country it is said: "It is now perfectly well settled that the plaintiff may recover damages for an injury caused by defendant's negligence notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was proximately caused by the defendant's omission, after becoming aware of plaintiff's danger, to use ordinary care for the purpose of avoiding injury at the time.   We know of no court of last resort where this rule is any longer disputed." 1 Shearman and Redfield on the Law of Negligence [4 Ed.], 99.   The foregoing is the law of our case in a nut shell and it would be an easy but useless task to cite a hundred cases from our own court where the above principle is fully recognized and applied.   They commence at least as early as the leading case of *Hulsencamp v. R'y*, 37 Mo. 537.   They were exhaustively reviewed in *White v. R. R.*, 34 Mo. App. 57, and extend in an unbroken series to the last volume of reports.   See, also, authorities cited by appellant in the first four points of its brief.   (2)   It appears that appellant still insists its demurrer to the evidence offered at the close of our case should have been sustained.   In this view of the case, the fact that plaintiff was a child and that some allowance at least must be made for the immature judgment and thoughtlessness of childhood, is entitled to weight on the question of contributory negligence. This is the rule of humanity, of parental government and is the benign doctrine of the law.   *Cooper v. R. R.*, 66 Mich. 261; *Eswin v. R. R.*, 96 Mo. 290; *Burger v. R. R.*, 112 Mo. 239; *Williams v. R. R.*, 96 Mo. 275; *Isabel v. R. R.*, 60 Mo. 475; *Gass v. R. R.*, 57 Mo. App. 574; and see for an exhaustive case on this point *Pitzer*

*v. R. R.*, 109 Ind. 179. "The rule is that where the facts are either disputed or different inferences may be fairly drawn by reasonable men from the undisputed facts, the question of negligence is one for the jury." *Fusili v. R. R.*, 45 Mo. App. 535; *O'Mellia v. R. R.*, 115 Mo. 205; *McNown v. R. R.*, 55 Mo. App. 585. The contention made by appellant that the remarks of respondent's counsel and the ruling of the court made thereon constitute reversible error, is without merit. Because: Said remarks were provoked by the unfair and incorrect statements of appellant's counsel. They were promptly and fully corrected by the court on objection made, and counsel was reprimanded and at once acquiesced in the court's ruling and apologized. *Evans v. Trenton*, 112 Mo. 404; *McDonald v. Cash*, 45 Mo. App. 80; *Wilburn v. R. R.*, 48 Mo. App. 233; *Smith v. Telegraph Co.*, 55 Mo. App. 632; *State to use v. Finn*, 24 Mo. App. 352; *Gidionsen v. R. R.*, 129 Mo. 403; *Burdoin v. Trenton*, 116 Mo. 374; *State v. Hilsabeck*, 132 Mo. 359.

SMITH, P. J.—The plaintiff, an infant ten years old, by his next friend, brought this action against the defendant to recover damages for personal injuries caused by the negligence of the latter. The specific acts of negligence alleged in the petition were in substance these: *First.* That defendant negligently ran and managed two locomotives running east in the said yards, by unnecessarily and negligently allowing steam to escape from their sides. *Second.* That the defendant's employees in charge of said engines negligently omitted to shut off said steam when they saw that it frightened plaintiff and he was in peril of being struck from another engine behind him. *Third.* The defendant's employees, managing

PLEADINGS.

VOL. 68 app—42

the engine running west which struck plaintiff, saw him get on the track, and saw that he was in danger, and omitted to give him any warning, by blowing the whistle or ringing the bell or otherwise. *Fourth.* That said employees had ample time and distance in which to stop said engine after they saw his peril, and before striking him, but negligently omitted to do so, and ran him down after they had knowledge of his danger.

The answer contained a general denial to which was subjoined the defense of contributory negligence.

There was a trial by a jury. At the close of the evidence for the plaintiff the court denied a demurrer interposed thereto by the defendant. At the conclusion of all the evidence the court at the instance of both parties fully instructed the jury in respect to all the issues made by the pleadings. There is no complaint made of the action of the court either in the admission or rejection of evidence, or in the giving or refusing of instructions, beyond what has just been indicated. The verdict was for plaintiff, and judgment was given accordingly; and from the latter the defendant has appealed.

Whether the evidence supports the verdict is the principal question which we are called upon to decide.

FACTS.

And this must be resolved in the light of all the evidence. It is conceded that the plaintiff was run over and injured by an engine in the defendant's railroad yards, where there were two tracks running east and west. It is likewise conceded that just before the injury happened there were two engines coupled together moving east on the north track and another moving west on the south track, and that they passed each other at or near the point where the latter ran over the plaintiff. Nelson, the engineer in charge of the engine which backed over plaintiff, testified that: "I seen this boy start from

the fence at the houses you can see just south of the 'rip' track (the south track). There is a little bank right next to the fence. He started up this bank and running in kinder northwest direction until he came to the 'rip' track. I was probably thirty yards or more from him when I seen him. When he got to the 'rip' track he starts down the track in the same direction I was going. I was gaining on him all the time. * * * I was leaning out of the window."

This testimony is quoted to show that the defendant's engineer, Nelson, who was in charge of the engine, saw plaintiff from the time he came into the railway yards until he was struck. As to whether the plaintiff entered upon the track from the north or south side thereof, or as to what distance the engine ran from the time of his entry thereon until it overtook him, or as to the distance he traveled thereon before he was struck, the evidence is quite conflicting.

The testimony adduced by the plaintiff was to the effect that he entered upon the track from the north side, and that he went the length of a rail, or about thirty feet, before the engine overtook him. It further tended to prove that the engine moved from sixty to seventy feet from the time he entered upon the track until it struck him. The plaintiff testified that he crossed over to the north side of the south track and was going west over the space between the south and north tracks and observed two engines, approaching from the west on the latter track, blowing off steam and making a noise to such an extent as to alarm him so that he stepped over on to the south track and run "a good little ways" west on it before he was struck from behind. His testimony was corroborated by that of the witness Trueman. After the proper foundation had been laid to contradict the

witness, Nelson, it was proved by four witnesses that he had on several occasions in substance stated that the plaintiff had got upon the track and run down it some distance, and that he had slowed up his engine to some extent, but supposing the plaintiff had got off the track and passed out of his sight around the other engines he did not bring it precisely to a halt then; that he had seen plaintiff running along the track ahead of the engine and looked for him to come out on the other side and not seeing him do so he asked the fireman if he had seen him come out, and receiving a negative response he then stopped the engine and got out. According to this testimony the plaintiff must have gone some distance on the track before he was overtaken and struck by the engine.

The undisputed evidence was that the speed the engine in question was running was three or four miles an hour, and that by the use of the appliances with which it was equipped it could be brought to a standstill within thirty feet. The plaintiff's evidence tended to further show that the servants of defendant in charge of the engine which ran over the plaintiff gave no warning of its approach. While unnecessary it is perhaps fair to say that the evidence of defendant tended to show that the bell on the engine was ringing just before and at the time of the accident. It was not disputed that the plaintiff was severely injured. One of his legs was crushed so that amputation became necessary. He was otherwise greatly mangled, bruised, and hurt.

The plaintiff at the time he received the injuries complained of was a trespasser, and was where he had no right to be. The defendant owed the plaintiff, in such case, only one duty, and that was not wantonly or with reckless carelessness to injure him. And although plain-

NEGLIGENCE: trespasser: railroad.

tiff was a trespasser still if those in charge of the engine saw him in an exposed and dangerous position in time to have avoided the injury, then they were bound to use all reasonable effort consistent with their own safety and that of the engine to avoid injuring the plaintiff. *Adams v. R'y*, 74 Mo. 554; *Rine v. R'y*, 88 Mo. 392.

In cases of this kind the liability of a defendant is limited to negligence and want of care after the exposed and dangerous position of the injured party comes to the knowledge of the servants who are charged with the want of care. *Yarnall v. R'y*, 75 Mo. 583; *Maher v. R'y*, 64 Mo. 267; *Zimmerman v. R'y*, 71 Mo. 477; *Hallihan v. R'y*, 71 Mo. 113; *Barker v. R'y*, 98 Mo. 50; *Lenix v. R'y*, 76 Mo. 86; *Maloy v. R'y*, 84 Mo. 270. The general rule is that when those in charge of a moving train discover an adult person on the track ahead of the train they have the right to presume that such person will leave the track before the train overtakes them. But if the defendant's servants saw the plaintiff on the track they could not persume he would get out of the way, or out of danger, as they might under some circumstances, had he been a person of mature years and discretion. *Williams v. R'y*, 96 Mo. 275; *Eswin v. R'y*, 96 Mo. 290. And so it has been held that if they see a child of tender years upon the track or any person known to them to be, or from his appearance giving them good reason to believe that he is insane, or badly intoxicated, or otherwise insensible of danger, or unable to avoid it, they have no right to presume that he will get out of the way, but should act upon the belief that he might not, or would not, and they should, therefore, take means to stop the train. *R'y v. Miller*, 25 Mich. 274; *R'y v. Pitzer*, 109 Ind. 179. And a similar doctrine was recognized in *Isabel v. R'y*, 60 Mo. 475.

——: railroad: dangerous position: presumption: age.

So far as disclosed by the record the plaintiff seems to be a boy of the average capacity and intelligence for one of his years. It may be conceded that the conduct of the plaintiff, when measured by the standard applied to an adult person of ordinary prudence, was negligent. It was said in *Spellan v. Railroad*, 111 Mo. 555, and resaid in *Burger v. Railroad*, 112 Mo. 238, "that no arbitrary rule can be established fixing the age at which a child, without legal capacity for other purposes, may be declared wholly capable or incapable of understanding and avoiding dangers to be encountered upon railway tracks. It is a question of capacity in each case." As further said in the last referred to case, "common experience and observation teach us that due care on the part of an infant does not require the judgment and thoughtfulness that would be expected of an adult person under the same circumstances. In the conduct of a boy, we expect to find impulsiveness, indiscretion, and disregard of danger, and his discretion is measured accordingly. A boy may have all the knowledge of an adult respecting the dangers which will attend a particular act, but at the same time he may not have the prudence, thoughtfulness, and discretion to avoid them, which are possessed by the ordinarily prudent adult person." Hence the recognized rule is that a child is not negligent if he exercises the degree of care which under like circumstances would reasonably be expected of one of his years and capacity. And whether he used such care in a particular case is a question for the jury. *Burger v. R'y, supra; Eswin v. R'y, supra.*

The case of *Barney v. Railroad*, 126 Mo. 372, is easily distinguishable from a case like the present. There the infant plaintiff while in the defendant's railway yards,—while a trespasser there—caught hold of the stirrup or lower round of the ladder on the side of a

*—; infant: rule: jury question.*

moving car (which was part of a train) and while holding on by his hands to this, with his feet on the journal that held the axle, his foot slipped off and went down onto the rails between the wheels and one wheel ran over his foot necessitating amputation. The trainmen did not see the plaintiff climbing to the side of the car, nor did they know of the accident until some time after it occurred. So that the rule is inapplicable to cases like this, where the duty of defendant to plaintiff does not arise until after his exposure and dangerous position comes to the knowledge of the servants, who are charged with the want of care. The rule in *Barney's* case, *supra*, is not repugnant to that in the cases to which we have adverted, nor has it the slightest application to a case when the facts are as here.

It seems to us that according to the principles of law to which we have adverted the evidence adduced by the plaintiff was ample to justify the submission of the case to the jury. Nor do we think that after all the evidence on both sides of the case was put in, that the court, on the issue of contributory negligence, would have been justified, had it been so requested, in giving for defendant a peremptory instruction, and it must follow from these considerations that we can not sustain the defendant's objection that there was no evidence to support the verdict.

The defendant further assails the judgment on the ground that counsel for plaintiff, during the argument before the jury made improper remarks which were calculated to mislead and prejudice them against defendant's case, which remarks the bill of exceptions shows to have been as follows:

PRACTICE: remarks of counsel: harmless.

*By Mr. Lamm, counsel for the plaintiff:* "Judge Shirk, the defendant's attorney, stated to you that he was willing, so far as he was concerned, to submit the

case to the jury on the plaintiff's own evidence, except for the fact that juries sometimes do not understand why the defendant does not put its employees on the stand to testify, and said to you that the plaintiff had made no case upon his own evidence, and yet Judge Shirk, the defendant's attorney, asked the court by a demurrer to the evidence, to declare that the plaintiff's evidence did not make out a case, and to take the case from the jury, but the court refused to do so, and overruled the demurrer and said that our evidence made out a case upon which to go to the jury." To this statement the defendant's attorney objected and the court reproved plaintiff's attorney and told him he had no right to so state to the jury, whereupon plaintiff's attorney, in the presence of the jury, turned to the court and said: "Your honor, have I not the right to tell the jury that the defendant asked the court to sustain a demurrer to the plaintiff's evidence, and that the court overruled the demurrer, and said that the plaintiff had made a case to go before the jury upon his own evidence?"

Whereupon the court again stated to plaintiff's counsel that he had no right to tell the jury what the ruling of the court was in their absence, and had no right to tell the jury that the court had ruled that the plaintiff had made a case by his evidence, whereupon plaintiff's counsel again turned to the jury and said: "Gentlemen of the jury, Judge Shirk told you he was willing to submit the case upon plaintiff's own evidence, and I said to you that Judge Shirk had asked the court to sustain a demurrer to plaintiff's evidence, and that the court had ruled that we had made a case to go to the jury on our evidence, but the court has ruled that I should not have made these remarks to the jury, and I therefore withdraw the remarks."

The remarks made by counsel for the defendant

in the first instance were improper and invited those of the plaintiff's counsel which were likewise improper. The latter's remarks were nothing more than a reply to those of the former. If the former did not desire the subject-matter of his own remarks brought to the attention of the jury he should not have therein made any reference to the same.

In view of the fact that the court promptly rebuked the counsel for plaintiff and properly instructed the jury, and that the plaintiff's attorney promptly withdrew his objectionable remarks and apologized to the court therefor, we can not think that any prejudice resulted to defendant. The jury clearly understood from the action of the court that what issues involved in the case were for them and not the court to decide. The established rule in such cases is that a prompt apology from the attorney after he is administered a rebuke by the court will ordinarily cure any prejudice his unwarranted remarks may have made. It is only when it is clear to the court that manifest prejudice has been done that it ought to interfere. *Gidionsen v. R. R.*, 129 Mo. 403. We are not of the opinion that the remarks complained of were harmful to the defendant, but whether so or not it is clear to us that the verdict was for the right party and can not be disturbed.

The judgment will accordingly be affirmed. All concur.