Maloy v. The Wabash, St. Louis & Pacific Railway Company.

---

MALOY, *Appellant*, v. The Wabash, St. Louis & Pacific Railway Company.

1. **Railroad:** CONTRIBUTORY NEGLIGENCE. Plaintiff's husband was killed in the forenoon of the day, on defendant's railway, which ran through the farm of the deceased. He was sixty years of age, decrepit, hard of hearing and of defective sight, and was seen just

before the accident, walking at a moderate gait along the railroad and onto a trestle, where he was killed by a coming train. *Held*, that under the facts and circumstances in evidence he was guilty of such contributory negligence as to preclude recovery.

2. ———— : ————. Train men have a right to suppose that adults walking on the track can hear the approaching train and will get out of the way.

3. Evidence: OFFERING OUT OF TIME. The refusal of a trial court to permit evidence to be offered out of time is not error, when, with such additional evidence, if admitted in the first instance, the party offering it would not have been entitled to a verdict.

*Appeal from Lafayette Circuit Court.*—HON. JOHN P. STROTHER, Judge.

AFFIRMED.

*John E. Burden* for appellant.

(1) The additional testimony offered by plaintiff should have been received. *Tierny v. Spiva,* 76 Mo. 279. (2) The demurrer to the plaintiff's evidence should have been overruled, and the trial court erred in taking the case from the jury. *Brown v. R. R.,* 50 Mo. 461 ; *Norton v. Ittner,* 56 Mo. 351 ; *Kelly v. R. R.,* 70 Mo. 604 ; *Cook v. R. R.,* 12 Reporter 351 ; *Tanner v. R. R.,* 60 Ala. 631. It is enough for plaintiff to raise a fair presumption of negligence. Probability is sufficient to go the jury. Abbott's Trial Evidence, 584, note 5. "In passing upon a demurrer to the evidence, the court is required to make every inference of fact in favor of the party offering the evidence which a jury might, with any degree of propriety, have inferred in his favor." *Buesching v. St. Louis Gaslight Co.,* 73 Mo. 221 ; *Wilson v. Board of Education,* 63 Mo. 137. (3) Under the evidence in this case the defendant was liable, notwithstanding the deceased may have been wrongfully on defendant's track. *Harlan v. Railroad,* 65 Mo. 22 ; *Scoville v. Railroad,* 79 Mo. ; *Warner v. City Railroad Co.,* 79 Mo. ; *Kelly v. Railroad,* 75 Mo. 138. "The negligence on the part of the

plaintiff, which will preclude his recovering damages for the negligence of the defendant, must be the actual proximate cause contributing to some extent directly to the injury, and not a mere technical 'wrong, contributing either incidentally, or remotely, or not at all, toward the injury." *Isbell v. Railroad*, 27 Conn. 393; 2 Redfield's American Railway Cases, p. 474, and note, and cases cited.

*W. H. Blodgett* and *G. B. Burnett* for respondent.

(1) The court did not err in refusing to admit the additional evidence offered by plaintiff, after the close of her case. *Rucker v. Eddings*, 7 Mo. 115; *Brown v. Burns*, 8 Mo. 26; *Crow v. Marshall*, 15 Mo. 499; *Owen v. Reilly*, 20 Mo. 603; *State v. Porter*, 26 Mo. 603; *Johnston v. Mason*, 27 Mo. 511; *Dozier v. Jerman*, 30 Mo. 220; *Seibert v. Allen*, 61 Mo. 482; *Tiernay v. Spiva*, 76 Mo. 279. (2) The demurrer to plaintiff's evidence was properly sustained. *Maher v. Railroad*, 64 Mo. 267; *Zimmerman v. Railroad*, 71 Mo. 476; *Purl v. Railroad*, 72 Mo. 168; *Yarnall v. Railroad*, 75 Mo. 575; *Powell v. Railroad*, 76 Mo. 80; 1 Thompson on Negligence, p. 450, and cases cited; Shearman and Redfield on Negligence (3d Ed.) sec. 1, p. 3, and sec. 2, p. 4; *Leduke v. St. L., I. M. & S. Ry.*, 4 Mo. App. 455; *Kennayde v. P. R. R.*, 45 Mo. 255; *Waldhier v. H. & St. J. R. R.*, 71 Mo. 516; *Harrison v. Mo. Pacific Ry.*, 74 Mo., on page 369. (3) Under the pleadings and proof the defendant was not liable. See authorities cited *supra*.

HENRY, C. J.—This is an action instituted in the Lafayette circuit court by plaintiff to recover $5,000 damages for the killing of her husband, John Maloy, on the sixth day of September, 1880, by a locomotive drawing a train of cars, which, it is alleged, was occasioned by the negligence, unskilfulness, and carelessness of the agents of defendant in managing, conducting, and running said locomotive and train. The answer was a

general denial, except as to the incorporation of defendant and the killing of John Maloy by a train of cars, and, as to the negligence alleged, denies it, and charges negligence on the part of the deceased, which directly contributed to his death. A demurrer, of the nature of a demurrer to the evidence, was sustained, whereupon plaintiff took a non-suit with leave, and the court having overruled the motion to set it aside, the cause is here on appeal.

The evidence on the part of plaintiff tended to establish the following facts: John Maloy was killed on the sixth day of September, 1880, between eight and nine o'clock in the forenoon. He was sixty years of age. Was seen by one Peter Walt, a witness introduced by plaintiff, between eight and nine o'clock, September 6, 1880, on a trestle of the Wabash railroad which spans a creek running through Maloy's farm. He had previously seen him west of the trestle, walking at a moderate gait on the railroad track, toward the trestle. Witness lived a fourth of a mile east of the trestle, and was about that distance northeast from the trestle when he saw Maloy. West of the trestle for forty yards is a clearing, but at that distance from the trestle west, it is woodland for some distance. Witness saw Maloy when the latter first came from the woods, walking on the railroad track, and heard the rumbling of the train before it came out of the woods. When Maloy was about half way across the trestle, three whistles were sounded on the locomotive, then at the west end of the trestle. Maloy was decrepit, and hard of hearing, and his sight was defective. Witness could not say whether he fell or was knocked off the trestle. The railroad runs east and west through Maloy's farm, and he could see the trains from his house. The train generally came before nine o'clock in the forenoon, was about on time this morning, and had been running that way some time, and was known as the nine o'clock train. Witness heard the train before he saw it. When the train got out of the timber, Maloy was on the trestle.

From the trestle west a mile or so, a man on the track at any point west of the trestle, within that distance, can be seen, and one thirty or forty yards west of the trestle could be seen two or three miles, by a man on the track of the road. Mrs. Walt's testimony was substantially the same as that of Peter Walt. She saw Maloy when he came out of the timber, and watched him because she thought he was in danger; she and Peter Walt recognized Maloy.

These are substantially all the material facts which plaintiff's evidence tended to prove, and, taking them as proved, they fully establish defendant's plea of contributory negligence. The railroad ran through deceased's farm within a short distance of his house. On the morning he was killed the train was on time, and had been running on that time so long that it was generally known as the nine o'clock train. It is fair to infer that he knew about what time the train passed there. His hearing and eyesight were defective, and yet, knowing all these facts, he deliberately went upon the track about the time the train was due, and sauntered along the track until he got upon the trestle, where he was killed. Two of his neighbors, a quarter of a mile further east of the train than he was, heard it coming. There is no evidence that the men on the train saw the deceased before he got upon the trestle, but only that they might have seen him, and even if they had seen him they did not see that he was in danger until they discovered him on the trestle. They had the right to suppose that neither his vision, nor his hearing was impaired, and that he would get off the track before the train reached him. There is no evidence to show that they could tell, when a mile or any considerable distance west of the trestle, its precise location, or how near the deceased was to the trestle, but the evidence does establish the fact that as soon as they discovered the danger into which he had placed himself, they did all in their power to avoid injuring him. To permit a recovery on such facts, would be to override what

must now be considered as well settled law in this state. *Maher v. R. R.*, 64 Mo. 267; *Zimmerman v. R. R.*, 71 Mo. 476; *Purl v. R. R.*, 72 Mo. 168; *Yarnall v. R. R.*, 75 Mo. 575; *Powell v. R. R.*, 76 Mo. 80.

After defendant filed its demurrer to the evidence, and before the court had passed upon it, plaintiff asked leave to introduce as witnesses, John Lafever and John Chidwell, to prove that the locomotive and train of cars by which Maloy was killed, were equipped with all modern appliances, air brakes, etc., for stopping the train, and that, from the construction of said locomotive and cars, the engineer could have seen the deceased on the track, in time to have stopped the train to prevent the killing of Maloy, after the engineer discovered, or ought to have discovered him in the place of danger when he stood on the bridge where killed. Aside from a principle of pleading which, it is urged by respondent's counsel, forbids the introduction of the evidence offered, suppose that so much of that testimony as would have been admissible, if offered at the proper time, had been admitted, how would it have strengthened the plaintiff's case? It was proved that the engineer could have seen a man on the track, from a point two miles west of the trestle. Now add to that, and the evidence already in, the fact that the locomotive and train were equipped with all modern appliances for stopping them, when did the engineer discover Maloy's danger? There is no evidence showing that the discovery was made before the whistle was sounded. When ought he to have discovered it? There is no evidence that it was owing to any neglect of duty that his danger was not discovered sooner. The engineer may have seen him, when he was two miles west of the trestle. Was it his duty then to stop the train or check its speed? He may have seen him when within a hundred yards; did the duty then arise to stop, or check the speed of the train? If the train men must stop the train or check its speed, whenever they see a trespasser on the track, of what practical utility would

railroad time tables be ? The case, even with such of the additional evidence as could possibly have been admitted in the first instance, would not have been such as to entitle plaintiff to a verdict. The train men have a right to suppose that adult persons walking upon their track for their convenience, can hear an approaching train, and will get out of its way. This train made such noise, that persons a quarter of a mile further from it than the deceased heard it distinctly, and recognized it as the noise made by an approaching train.

But the offer to prove by these two witnesses, that *from the construction of the locomotive and train, the engineer could have seen the deceased on the track, in time to have stopped the train, after he discovered, or ought to have discovered Maloy's danger, when he stood on the trestle,* was simply preposterous. They were not witnesses of the tragedy, neither saw nor knew anything about it; and would not have been allowed to testify to the jury as proposed at any stage of the trial. How is it possible, that one who did not see the killing, who was not present, could testify that the construction of the locomotive and engine was such, that the engineer could have stopped it, after he discovered or might have discovered Maloy's danger, in time to have avoided killing him? How could such witnesses know when he discovered the danger? How could they tell at what precise time, if he had been on the alert, the engineer would have discovered his danger? To admit such evidence would be carrying the doctrine, with respect to expert testimony, beyond any bounds yet prescribed for such testimony.

The judgment is affirmed. All concur.