GRANEY *et ux.* v. ST. LOUIS, IRON MOUNTAIN & SOUTH-
ERN RAILWAY COMPANY, *Appellant.*

In Banc, June 8, 1897.

1. **Railroad**: ORDINANCE: NEGLIGENCE: DIRECT INJURY.  When it has
been established that a railroad company was negligent in running a
train at a rate of speed in excess of the maximum rate fixed by ordi-
nance, the road is liable for all damages directly resulting from such
negligence, though the particular injury might not have been antici-
pated.  Proof of the negligence and of an injury directly resulting
therefrom makes a *prima facie* case for damages.

2. ———: MOVEMENT OF AIR: CONTRIBUTORY NEGLIGENCE.  In this case
the evidence showed that a train moving six miles an hour could not
cause such a disturbance of the air as to throw down and roll under
the train a boy twelve years old, but that one moving twenty miles
per hour would, especially by the time half or two thirds of the train
had passed the boy.  *Held,* as the evidence showed the train to be
moving twenty miles per hour, that the road was guilty of negligence
in operating the train and that the death of the boy was the immediate
consequence thereof.  But *held,* also, that before there could be a
recovery the evidence must show that negligence could not be attri-
buted to the boy in voluntarily standing at the crossing, so near the
train as to be thrown down by the current of air created thereby.
*Held,* also, that a boy is required to exercise only a degree of care
commensurate with his intelligence, experience and knowledge.
*Held,* also, that it can not be determined from the mere age of the
boy that his knowledge was sufficient to justify the court in declaring
as a matter of law that he was guilty of contributory negligence.

3. ———: INSTRUCTION.  An instruction that told the jury that the boy
was not negligent if he was standing far enough away from the track
not to be struck by the engine or train was error, because the evi-
dence showed and the petition claimed that the cause of the injury
was the disturbance of the air, and because it leaves out of consid-
eration the question of contributory negligence.

4. ———: EVIDENCE: WITNESS.  In an action for damages for the kill-
ing of a boy, founded on an allegation that the boy while standing on
the ground was sucked under a moving train as the result of the
creation of a current of air, by the running of the train faster than
the rate permitted by law, it was error to permit witnesses to testify
to the disturbance trains caused in the air as shown by the throwing
of mail bags from a moving train.

*Appeal from St. Louis County Circuit Court.*—HON., RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED.

*Martin L. Clardy* and *Henry G. Herbel* for appellant.

(1)   The court erred in admitting as evidence the opinions of James E. Lavin, and Edwin C. Carlin, as to the effect of the draft caused by a rapidly moving train.   They were not experts, nor is it shown that they possessed any special knowledge of the laws of physics.   Their experience was only such as comes to every individual.   Lawson on Expert Evidence, 195, 196; *Naughton v. Stagg*, 4 Mo. App. 275; 1 Greenleaf on Evidence, 578; Rogers on Expert Evidence, pp. 23, 33, 64; *Ferguson v. Hubbel*, 97 N. Y. 507; *Riley v. Sparks Bros.*, 52 Mo. App. 572; *Lockridge v. Fesler et al.*, 37 S. E. Rep. 65; *Dickenson v. Fitchbury*, 13 Gray, 546; *Benjamin v. Railroad*, 50 Mo. App. 602; *Railroad v. Kellogg*, 94 U. S. 472; *Brown v. Road Co.*, 89 Mo. 155; *Eubank v. City*, 88 Mo. 655; *Hurt v. Railroad*, 94 Mo. 260; *Gutridge v. Railroad*, 94 Mo. 472; *Senn v. Railroad*, 108 Mo. 142; *State v. Watson*, 65 Me. 70. (2)   The speed of the train was violative of the ordinance in force at the time of the accident, but was not in violation of the one in effect at the time of the trial.   *Coe v. Ritter*, 86 Mo. 282; *City of St. Louis v. O'Eters*, 36 Mo. 456; *Edmonson v. Ferguson*, 11 Mo. 346; *Billion v. Walsh*, 46 Mo. 492; *State ex rel. v. Hager*, 91 Mo. 456; Cooley's Const. Lim., pp. 471 and 343; *Watson v. Mercer*, 8 Peter, 88; *Yeaton v. United States*, 5 Cranch, 281; *Drehman v. Stifel*, 41 Mo. 184; *South Carolina v. Gaillard*, 101 U. S. 433; *City of Kansas v. Clark*, 68 Mo. 588; *Mayor v. Swink*, 35 S.

W. Rep. 554. (3) Where a statute is penal it should be strictly construed, and so as not to enlarge the liability it imposes nor allow a recovery unless the party seeking it brings his case within the terms or conditions authorizing it. *Hoag v. Railroad*, 85 Pa. St. 293; *Breen v. St. L. Coop. Co.*, 50 Mo. App. 212; *Bell v. Railroad*, 72 Mo. 58; Railway Accident Law (Patterson), sec. 160; *Railroad v. Feathers*, 15 Am. and Eng. R. R. Cases, 446; *Johnson v. Railroad*, 13 Am. and Eng. R. R. Cases, 623; *Hodges v. Railroad*, 71 Mo. 50; *Bauer v. Railroad*, 69 Mo. 219. (4) The court is not bound to adopt plaintiff's theory of the cause of the accident, but will take judicial notice of the scientific facts involved to determine whether the theory advanced can be sustained. *Terhune v. Phillips*, 99 U. S. 592; *King v. Gallan*, 109 U. S. 99; Underhill on Evidence, 366 and 371; *Gas Light Co. v. Ins. Co.*, 33 Mo. App. 348; 1 Greenleaf on Evidence [15 Ed.], sec. 5. (5) The contributory negligence of deceased precludes a recovery in this case. He has no right to put himself in a place of danger in order to experiment with the effects of a passing train. *Yarnall v. Railroad*, 75 Mo. 583; *Guenther v. Railroad*, 108 Mo. 18; *Prewitt v. Eddy et al.*, 115 Mo. 283; *Dlauhi v. Railroad*, 105 Mo. 645; *Ridenhour v. Railroad*, 102 Mo. 270; *Payne v. Railroad*, 129 Mo. 421; *Spillane v. Railroad*, 37 S. W. Rep. 198.

*W. B. Thompson* for respondents.

(1) This violation of the statute and of the ordinances of the city of St. Louis constitutes negligence *per se*. *Dahlstrom v. Railroad*, 108 Mo. 525; *Keim v. Railroad*, 90 Mo. 314; *Eswin v. Railroad*, 96 Mo. 290; *Schlereth v. Railroad*, 96 Mo. 509; *Grube v. Railroad*, 98 Mo. 330; *Kellny v. Railroad*, 101 Mo. 67; *Murray*

v. *Railroad*, 101 Mo. 236.   (2)   The deceased, James Graney, had the right to assume that the train of defendant moving along and upon a public traveled street would be operated in obedience to the commands of the ordinance, and that he could stand at a sufficient distance to protect himself from any danger or accident if the train was moving over the street in obedience to the said ordinance. *Railroad v. Then*, 42 N. E. Rep. 971; *Railroad v. Harrington*, 49 Am. and Eng. R. R. Cases, 355; *Gratiot v. Railroad*, 116 Mo. 450; *Sullivan v. Railroad*, 117 Mo. 214.   (3) The ordinance pleaded by defendant is prospective in its nature and by its terms, and there is not to be gathered from the ordinance any intent that it should be construed retrospectively. *Leete v. The State Bank of St. Louis*, 115 Mo. 184; *State ex rel. v. Auditor*, 41 Mo. 25; *State ex rel. v. Ferguson*, 62 Mo. 77; Sedgwick Stat. Const. Law, 166, 188, 202; *State ex rel. v. Greer*, 78 Mo. 188; *State ex rel. v. Railroad*, 79 Mo. 420; *State v. Grant*, 79 Mo. 113; Cooley's Const. Lim., 362.   (4)   A construction of the ordinance relied upon by appellant that it is retrospective or retroactive, would destroy the vested right which the respondents had in the cause of action then existing and for which a suit had been brought, and was then pending, and in that respect the ordinance would be in conflict with the bill of rights. Const. 1875, sec. 15, art. 2; *Leete v. State Bank of St. Louis*, 115 Mo. 185; *Ex parte Bethurum*, 66 Mo. 545.   (5)   The vested right which plaintiffs had in this cause of action is for compensatory damages, and which damages are liquidated by the statute.   Nor does it differ from any other right to recover damages where damages are fixed by law, and the amount to be recovered is likewise fixed by law.   *Coover v. Moore et al.*, 31 Mo. 574; *Phillpot v. Railroad*, 85 Mo. 164.   (6)   The undisputed facts in the case show that there is a direct connection between

the negligent act and the result, and that such result was naturally to be foreseen. The high speed of defendant's train naturally caused a suction, and the logical consequence of such speed is to produce a result such as was fatal in this case, and this result is not only sustained by the facts in the case, but by the rules of science. *Pullman Palace Car Co. v. Lane,* 143 Ill. 260; Cooley on Torts, 70–75; *McDonald v. Railroad,* 22 S. W. Rep. 944; *Hays v. Railroad,* 70 Tex. 602; *Strauss v. Railroad,* 75 Mo. 185.

MACFARLANE, J.—This is an action by plaintiffs, who are husband and wife, to recover the statutory damages of $5,000 for the death of their minor son James Graney, caused, as alleged, by the negligence of the employees of defendant in running one of its freight trains in the city of St. Louis.

The petition charges, in substance, that on the eighteenth day of January, 1891, there were in force three valid ordinances in the city of St. Louis, one prohibiting any car or cars, or locomotive propelled by steam power to be run at a rate of speed exceeding six miles per hour; another requiring such locomotive to ring a bell constantly, while running within the city limits; and the third imposing a penalty for violation of either of the other two.

The petition then charges the circumstances under which the son of plaintiffs was killed substantially as follows:

"The said James, the infant son of plaintiffs, was, on the 18th day of January, 1891, standing upon the crossing of Dorcas street in the city of St. Louis alongside the track of defendant's railway, and at a sufficient and proper distance away from said track, and away from the locomotive and cars operated by defendant, when the servants of defendant, without warning,

recklessly, negligently and at a speed prohibited by an ordinance of said city, ran a train of freight cars over said track, by reason of which their son fell and was sucked under the wheels of the cars and was thereby killed." The only negligence charged is the violation of these ordinances.

Defendant answered by a general denial, and a plea of contributory negligence. It also averred that said ordinances, regulating the speed of trains, had been repealed since the death of James Graney, by an ordinance limiting the rate of speed to twenty miles per hour.

On the trial the ordinances pleaded were read in evidence. It was admitted that James Graney was killed on the eighteenth of January, 1891, by being run over by a train of freight cars operated by defendant and that he was the minor son of plaintiffs. It was shown that on the date mentioned defendant controlled and operated a railroad, a portion of which was located in the city of St. Louis. It has two tracks, running north and south, which cross Dorcas street at right angles. This street runs east and west through the city. On Sunday afternoon, January 18, 1891, James Graney, then eleven years and nine months old, and four other boys, who were from one to two years older, came down Dorcas street from the west intending to cross the railroad of defendant. When close to the track a train of twenty-three freight cars drawn by an engine came onto the crossing from the south in front of them. The engine bell was not ringing, and the train was running twenty or twenty-five miles per hour. The boys stopped at various distances from the track to await the passage of the train. James Graney stood between the two tracks two or three feet from the west rail of the east track upon which the train was passing. When about half or two thirds of the train had passed,

he was seen to whirl around and fall upon the ground and roll over. In rolling, his legs got upon the rail and the cars passed over them. From this injury he died on the next day.

These are substantially the facts proved on the trial. There was no material conflict except as to the speed of the train and giving the signals. No witness gives the speed of the train at less than six miles per hour. The other boys who were with deceased testified to a speed of over twenty miles per hour. At the close of all the evidence defendant's counsel asked the court to give an instruction in the nature of a demurrer to the evidence, which was refused.

The court gave each party a number of instructions, and refused some asked by defendant.

Number 7, given at request of plaintiff, is as follows:

"The court instructs the jury that plaintiff's minor son, James Graney, was entitled on the 18th day of January, 1891, to pass over and upon Dorcas street where the tracks of defendant cross the said street, if the jury find from the evidence that said Dorcas street was a public traveled street of the city of St. Louis, and to stop at any place upon said street away from the track of said defendant on which it was operating its train; and if the jury find from the evidence that said James Graney was away from the said track of said defendant a reasonably sufficient distance so that he was not struck by the locomotive or train or by any motion or other agency caused by the approach of said train; and the jury further find that the said James Graney, without any fault or negligence on his part, was drawn in by the air caused by the velocity of said train being operated in excess of six miles an hour, and by that cause alone was injured by having his feet drawn in and under the said train, and that such injury was the cause of his death on the 19th day of

January, 1891, then the jury will find for the plaintiffs.''

There was a verdict and judgment for plaintiffs and defendant appealed.

I.   Counsel for appellant insist, in the first place, that the repeal of the ordinance in force at the date of the accident, defeats the right of action grounded upon negligence in running the train at a rate of speed prohibited by the ordinance.

The argument is based upon the well recognized principle of law that ''a right to have one's controversies determined by existing rules of evidence is not a vested right,'' and ''like other rules affecting the remedy, they must therefore at all times be subject to modification and control by the legislature.''   Cooley's Const. Lim., 450; *Coe v. Ritter*, 86 Mo. 282.

What the effect of a repeal of the existing ordinance of the city would be in making proof of negligence which rests entirely upon its violation might be an interesting question.   But an examination of this record does not show that the ordinance in question was repealed in respect to the limitation on the rate of speed of trains by the subsequent ordinance passed by the city.   The ordinance in force at the date of the accident is known as section 25, article 4, of chapter 31, of revised ordinance of the city of St. Louis, and reads:   ''It shall not be lawful within the limits of the city of St. Louis, for any car, cars or locomotives propelled by steam power to run at a rate of speed exceeding six miles per hour.''   Exceptions are made which have no application to the train by which the death of the boy was occasioned.

The subsequent ordinance amends the revised ordinances of the city by striking out sections 1234, 1235, 1236, 1237 and 1238 of article 5, chapter 31, and inserting five new sections in lieu thereof.   The first of these

requires railroad corporations to maintain gates at street crossings and keep a watchman to operate the same. The next three sections provide for enforcing compliance with the first. The fifth, upon which defendant relies, is as follows:

"It shall not be lawful within the limits of the city of St. Louis for any person, association or corporation to run any engine, car or train of cars propelled by steam power at a rate of speed exceeding six miles per hour over, along or across any cross or intersecting street, avenue or road, which is now or may hereafter be used for wagon travel, if such person, association or corporation shall have failed to comply with a notice from the street commissioner, specified in section one thousand two hundred and thirty-four. But after compliance therewith it shall be lawful for any person, association or corporation to run its engines, car or train of cars at a rate of speed not exceeding twenty miles per hour."

Now it is evident that the prohibition in respect to the speed of trains, contained in the original ordinance, was continued in force until the railroad corporation complied with the requirements of section 1234 of the substituted ordinance. There was no proof that defendant maintained a gate or kept a watchman at the crossing of Dorcas street. Indeed the inference may be readily drawn from the evidence that the requirements of the substituted ordinance had not been complied with, and defendant was therefore limited to a speed of six miles per hour.

From what is said we do not wish to be understood as expressing or intimating an opinion as to what effect an absolute repeal of the original ordinance would have had upon its admissibility as evidence in proof of negligence. According to defendant's con-

tention the substituted ordinance furnished the evidence.

II.   Was the demurrer to the evidence properly denied?   First, was defendant's negligence the proximate cause of the injury?

Under the ordinance in force in the city of St. Louis defendant was negligent in running the train at a rate of speed in excess of six miles per hour.   The negligence being established defendant is liable for all the consequences directly resulting therefrom, though the particular injury might not have been anticipated.   In case the negligence is admitted, or otherwise proved, and the injurious consequences are immediate, and flow directly from the negligent act, the person guilty of the act will not be excused for the reason that the particular consequences were unusual and could not, ordinarily, have been foreseen.   Proof of negligence and of injury directly resulting therefrom makes, prima facie, a case for damages.   16 Am. and Eng. Ency. of Law, 422.

It is well known from common observation and experience that a moving train, or other body, creates a movement of the air near it.   The force of the disturbance of the air is increased with the increased velocity of the moving object.   A rapidly moving train causes such a disturbance of the air as to tend to move or overthrow one standing very near to the track.

F. E. Nipher, professor of physics of Washington University, of St. Louis, Missouri, testified as a witness for plaintiff.   He stated that he had occupied the position as professor of physics for twenty years; had frequently observed the motion of bodies through the air; had experimented on the effect a moving train has upon the air.   A train of twenty cars running at six miles per hour has no appreciable effect

upon the air, but the effect is very much greater when the speed is twenty miles per hour.

The witness was asked what effect the air, struck by a running train, would have upon bodies standing close to it. He answered: "The body that is very close to the moving train as the train approaches—the front part of the train, the body would have a tendency to be pushed away from the front part of the locomotive by the parting of the air, but along toward the latter part of the train, the air is carried along with the train, and a person standing near a car or train like that, the air would have a tendency to draw along with it. It would have a tendency to produce its rotation on the party, that is to say, the side of the party toward the train would be whirled around and carried with and toward the train. I have always felt this current of air while standing near a moving train in making such tests.

"Q. Now, suppose a person, a small boy, weighing about sixty pounds, was standing near a train, running at twenty miles an hour, what would you say would be the effect of the velocity of the air created by that train on that boy? A. The effect of that would be to upset him perhaps, and in doing so, if he were to fall, it would produce a whirling of his body, which would roll him toward the train.

"Q. Could that occur if the train was running at six miles an hour? A. No, sir; there would be no effect of that kind produced on the boy."

The witness gave it as his opinion that the boy might have been thrown down and rolled under the wheel by force of the air without "the boy striking the train, or the train striking the boy." Also, that the air would give to the body a rotary motion toward the cars.

We have no right to disregard this evidence as

being contrary to known laws.   The evidence tends to
prove that James Graney was standing within two or
three feet of the track as the train passed him.   When
about half the train had passed he was observed to
turn and fall in the direction in which the train was
moving, and to roll over on the ground, his legs
thereby going upon the rail.   An inference may be
reasonably drawn from these facts that he was thrown
down by the force of the current of air caused by the
unlawful speed at which the train was run.

We have therefore evidence tending to prove
negligence in operating the train and that the death of
the boy was the immediate consequence thereof.   These
facts, if found by the jury, would authorize a recovery,
unless negligence can be attributed to the boy in vol-
untarily standing so near the running train as to be
thrown down by the wind created thereby.

III.   Deceased saw the train, and, standing as he
was, by the side of it, knew its rate of speed was un-
lawful, or at least he was not entitled to indulge the
presumption that it was running less than six miles
per hour.   If an injury had been suffered by a person
*sui juris* in the same circumstances, and for the same
cause, we could not hesitate to declare his conduct in
standing so near the track such negligence as would
preclude a recovery.   But a boy of twelve years is only
required to exercise the degree of care commensurate
with his intelligence, experience and knowledge, and
is only chargeable with contributory negligence accord-
ing to the same rule.   Whether, in a particular case,
his concurring negligence will defeat a recovery, is
generally, but not always, a question of fact to be de-
termined by the jury.   Where it appears conclusively
that a boy of such age has knowledge of the danger of
doing an act and sufficient intelligence to avoid it, and
nevertheless voluntarily does it, and is injured thereby,

he will be chargeable with contributory negligence as a matter of law. The fact that he was reckless in the face of the danger should no more excuse him than the same characteristic would excuse an adult person. *Payne v. Railroad*, 136 Mo. 562; *Spillane v. Railroad*, 135 Mo. 414; *Ridenhour v. Railroad*, 102 Mo. 270. James Graney was eleven years, nine months old, at the date of his death, and was small for his age, weighing only about sixty-five pounds. The record gives us no information in respect to his intelligence, knowledge of running trains, or physical activity. That he was indiscreet can be readily inferred from his conduct on the occasion of his death.

The question then is whether, in the circumstances under which the boy met his death, we can declare as a matter of law that he was guilty of contributory negligence.

In order to declare this as a conclusion of law we must presume, from his age alone, that he was capable of understanding the danger to which he exposed himself. It has been held that a boy between eleven and twelve years of age will be presumed to know the danger he incurs in going upon a railroad track immediately in front of a running train. *Masser v. Railroad*, 68 Iowa, 602; *Tucker v. Railroad*, 124 N. Y. 308. But the capacity to know and the ability to avoid danger is generally to be determined by the character of the danger and the precaution necessary to be taken in order to avoid it. While a boy twelve years of age may well be presumed to know the obvious danger of going upon a railroad track before a running train, he might not have knowledge of the danger of standing so near the track while a train is passing. We do not think it conclusively appears, from the mere evidence of the age of deceased, that his knowledge was sufficient to justify the court in declaring as a matter of

law that he knew the danger of his negligent act, and the jury was properly left to determine whether, in the circumstances, contributory negligence should be imputed to him.    We are of the opinion that the trial court did not commit error in refusing the demurrer to the evidence.

IV.    We are of the opinion that the seventh instruction given at request of plaintiff is misleading and improperly declares the measure of care required of one standing beside a railroad track while a train is running over it.    As will be seen, the instruction, in effect, tells the jury, as a matter of law, that deceased was not negligent if he stood a sufficient distance from the track to avoid being struck by the locomotive and train passing upon it.    Thus the instruction ignores the very cause which produced the injury, namely the disturbance of the air.    A prudent person would stand far enough from the track to avoid the dangerous effect of the wind produced by the train.    Whether a boy could stand nearer a train than common prudence would dictate in the case of an adult person, and avoid the effect of his conduct if injured, would depend upon whether contributory negligence could be imputed to him.    The degree of care required of a boy is not different from that required of a man if the former is chargeable with contributory negligence at all.

The act of deceased in voluntarily taking a position so near the train as to be thrown down by the disturbance of the air was a negligent act and the jury might properly have been so instructed.    He had no right to presume that the train was running at less speed than six miles per hour when he could see that it was moving much faster.    His companions knew that it was running over twenty miles per hour, for they all testified to the excessive rate of speed.    The question then was whether deceased had knowledge and under-

standing of the danger he incurred in taking a position within two or three feet of this train, and trying to stand there while it passed him.

V.   Two witnesses, Lavin and Culvert, were called as experts, and were permitted to give their opinion as to the effect the current of air produced by a freight train running at the rate of twenty miles per hour, would have upon a boy weighing sixty-five pounds, standing within two or three feet of it.

These witnesses were allowed to detail in chief to the jury their observations of the effect of the air upon mail sacks thrown from running trains. This evidence was entirely irrelevant to any issue on trial. It did not even correctly illustrate the question in issue. An object thrown from a train while in motion is carried forward by the momentum of the train, as well as by the current of the air, and the effect of the current on them might not be the same as that produced upon a stationary object. The court should not have permitted these witnesses on examination in chief, to detail to the jury the result of these experiments.

Judgment reversed and cause remanded. BARCLAY, C. J., and GANTT and BRACE, JJ., concur. SHERWOOD, BURGESS and ROBINSON, JJ., dissent.