CHICAGO & ALTON RAILROAD COMPANY, Respondent, v.
KANSAS CITY SUBURBAN BELT RAILROAD
COMPANY, Appellant.

Kansas City Court of Appeals, January 16, 1899.

1. **Railroads**: TRANSFER TRAIN: TRESPASS: EVIDENCE.   The evidence
in this cause is reviewed and the defendant's transfer train is *held*
to be a trespasser in going on the plaintiff's tracks at the time of the
collision.

2. ———: ———: CONTRIBUTORY NEGLIGENCE: VIOLATION OF ORDI-
NANCE: PROXIMATE CAUSE.   A plaintiff can not recover unless de-
fendant's negligence is the only approximate cause of the injury,
and plaintiff's running its train at an excessive speed will not de-
feat a recovery unless such speed was the proximate cause of the
injury; and on the evidence in this case it is *held* that the plaintiff
is not guilty of contributory negligence and that its only duty to
defendant was not wantonly, willfully or with gross negligence to
injure it.

3. ———: BAILMENTS: BAILEE'S RIGHT OF ACTION: INSTRUCTION: DAM-
AGES.   A railroad having on its tracks a car of goods to be trans-
ferred to another road is a bailee and may maintain an action for
injury thereto, but a recovery will prevent a further action by the
owner; and an instruction submitting the measure of damages set
out in the opinion is approved.

4. ———: VIOLATION OF ORDINANCE: CONTRIBUTORY NEGLIGENCE: IN-
STRUCTION.   An instruction on the subject of contributory negli-
gence growing out of running in violation of an ordinance is *held*
a proper enunciation of the doctrine applicable to this case.

*Appeal from the Jackson Circuit Court.*—Hon. J. H. Slover, Judge.

Affirmed.

Trimble & Braley and John A. Eaton for appellant.

(1) The main question in this case was raised by the demurrer to the evidence and the peremptory instruction requested by the defendant at the close of all the evidence. Even if we assume that the defendant had no right to be in plaintiff's yards at all, and that being there it was its duty to flag in both directions, nevertheless, the conclusion is inevitable, that this accident was caused by the contributory negligence of plaintiff in running into the defendant's train. (2) It has been decided a number of times in this state that running at a greater rate of speed than provided by ordinance is negligence *per se*. Gratiot v. Railway, 116 Mo. 450; Keim v. Railway, 90 Mo. 314. Therefore even if this engineer was running eight miles an hour he was violating an ordinance of Kansas City. Chamberlain v. Railway, 133 Mo. 587; Burger v. Railway, 112 Mo. 238, 246; Payne v. Railroad, 136 Mo. 562, 579; Graney v. Railroad, 140 Mo. 89. (3) The court erred in instructing the jury that they might find for the plaintiff the amount of the damages to car number 8064, and the amount of damage to the corn therein. (4) The court erred in giving instruction number 2, asked by the plaintiff. The testimony of the plaintiff's engineer was that if the train had been running at six miles an hour on a straight track, he could have stopped the train in time to have avoided the collision. We have conclusively shown that the track was straight.

Wash Adams for respondent.

(1) Neither defendant's demurrer to the evidence, nor its instruction asked at the conclusion of all the evidence

to find for defendant should have been given. If a plaintiff can not plead one ground of negligence and recover on another (as was decided in the Waldhier case, 71 Mo. 516) neither is a defendant allowed that privilege. Harrison v. Railroad, 74 Mo. 364-369; Roddy v. Railroad, 104 Mo. 235; Huhn v. Railroad, 92 Mo. 450; Heiter v. Railroad, 53 Mo. App. 331; Reardon v. Railway, 114 Mo. 385; Zimmerman v. Railroad, 71 Mo. 476; Langan v. Railroad, 72 Mo. 398; 3 Elliott on Railroads, sec. 1258; Railroad v. Cook, 66 Fed. Rep. 115; Railroad v. Moseley, 57 Fed. Rep. 921; Webb's Pollock on Torts, pp. 571, 573, 577, 591; Reed v. Railroad, 50 Mo. App. 506; Gannon v. Gas Light Co., 46 S. W. Rep. 968; Railroad v. Railroad, 60 Fed. Rep. 995. (2) The lower court was right in submitting to the jury the injuries to car 8064 and contents, stating the amount of damage to this car in plaintiff's instruction number 1 was justified by the agreement fixing the amount of that damage. Story on Bailments [9 Ed.], sec. 93, p. 93; sec. 94, p. 107. (3) A carrier of goods has a remedy for injury to the goods against the offending party. Addison on Torts [Wood's Ed.], secs. 631 and 1292; 3 Wood's Railroad Law, sec. 451; Poole v. Symonds, 1 N. H. 289-292; Railroad v. Rent, 6 Bradw. 243; Railroad v. Kenney, 41 Mo. 271. (4) The court did not err in giving plaintiff's instruction number 2. That instruction required the jury to find before defeating plaintiff's claim, that plaintiff's negligence, if any, in running the train faster than six miles per hour directly contributed to cause the collision. This proposition of law is manifestly correct. Pinnell v. Railroad, 49 Mo. App. 170; Bowman v. Railroad, 85 Mo. 538; Karle v. Railway, 55 Mo. 476; Kelley v. Railway, 75 Mo. 138, 142; Elliott on Railroads, secs. 1204, 1214, p. 1874; Wharton on Neg. [2 Ed.], sec. 303, p. 274.

SMITH, P. J.—This is an action brought by the plaintiff, the Chicago & Alton Railroad Company, against the defendant, the Kansas City Suburban Belt Railroad Company, for damages for placing and leaving some cars on a passing, or meeting track, in the yards of defendant, in the way of one of its passenger trains coming into Kansas City from St. Louis, resulting in a collision between such passenger train and the cars thus left by defendant on plaintiff's track, thereby injuring plaintiff's engine, postal car and track, and destroying a Wisconsin Central car loaded STATEMENT.    with corn and injuring its contents, which plaintiff held in its yard as bailee for transfer to the Rock Island Railroad for further shipment.    There was a trial resulting in judgment for plaintiff and defendant appealed.    The first question which we are called upon to determine is whether or not the trial court, at the conclusion of all the evidence, should have, as requested by defendant, directed the jury to find for it.    This must be resolved in the light of the salient facts which the evidence tends to establish and which may be grouped in about this way:

The plaintiff was, and for a long time had been, the lessee and occupant in its railroad business of what is known as the "Alton Elevator Yards" in the east bottoms in Kansas City, Missouri.    In these yards were a considerable number of tracks and among them a main track and a second main track known as track number 1, which for many years had been used as a meeting and passing track for passenger and freight trains coming in and going out of Kansas City, and for switch engines.    When the defendant's belt railroad was built in 1891 or 1892 it crossed the plaintiff's tracks just west of the yard.    Shortly after this an agreement was made between plaintiff and defendant for a connection between the railroads for the interchange of business.    When the connection was put in, plaintiff agreed to allow defendant to use what was known as the Zenith Mill track and one

other side track parallel with the main track. In order to do this defendant had to use four or five hundred feet of plaintiff's main track west of the Suburban Belt crossing in order to get on to these two side tracks. Defendant was to deliver cars for plaintiff onto those tracks and receive cars thereon. About a year after this connection had been put in, defendant being desirous of getting an outlet to the roads in the West bottoms, then made a trackage arrangement with plaintiff under which defendant had the right to use plaintiff's main track near the connection—near the gas works at the Hannibal & St. Joe junction, and to use their engines and haul their cars over plaintiff's tracks for that distance, for which they paid a trackage charge.

On May 11, 1893, the trainmaster of plaintiff wrote defendant requiring its men, in making transfers, to flag in both directions and warning defendant not to venture on the tracks of plaintiff on the time of any passenger train. On September 17, 1894, plaintiff by letter addressed to the general superintendent of defendant, terminated these agreements respecting transfer business. On October 7, 1894, after the foregoing agreements for transfers had been terminated, the plaintiff issued its time card showing that track number 1 in the yards was a meeting and passing track for passenger trains 48 and 51 and mailed (by railroad mail) three copies of this card to defendant.

In the meantime, after those agreements had been terminated, defendant having no authority, still went occasionally into the said yard and made transfers with the knowledge of the yard crew of plaintiff, but not to their knowledge south of track number 1. There was evidence adduced tending to show that it was a general custom among railroads in Kansas City, well known and of long standing, that the railroad using the yards of another should protect their transfers by flagging and take the burden of keeping out of the way of passenger and freight trains.

About 5:30 p. m. November 13, 1894 (the day of the collision) the foreman of the switch crew of plaintiff in the yards, locked the switches and told the foreman of defendant's switch crew that he could not on that day get the transfers till after 7 p. m., because he was going to lock the switches and that track number 1 had to be kept clear for passenger trains that met there. This track about one and three fourths miles long had always been kept clear and was used as a passing or meeting track.

On November 6, 1894, R. L. Crawford & Company, at Lowry City, Missouri, shipped two car loads of ear corn over the Osceola & Southern railroad, consigned to Davenport Syrup & Refining Company, at Davenport, Iowa. On November 13, 1894 (the day of the accident), this car belonging to the Wisconsin Central Railroad and its contents of corn belonging to the Davenport Syrup & Refining Company, were in the yards of plaintiff, as bailee, for delivery to the Rock Island Railroad for further shipment.

On November 13, 1894, about 5:50 p. m. the switching crew of defendant unlocked the switches and went into plaintiff's yard to get some transfers and took several cars including this car of corn and went south in the yards and left their transfer train including this car of corn, a little west of Lydia avenue crossing standing partly on track number 1 and partly on track number 3 in the way of the passenger train due over this track number 1 at 6:15 p. m. without flagging in either direction. At that time Collins, one of defendant's crew, knew this track was used as a meeting track for plaintiff's trains. The suburban trains of defendant crossed track number 1 every thirty minutes just west of the Alton Elevator yard. Track number 1 had been used as a meeting and passing track daily for plaintiff's passenger trains, 48 and 51, for thirty-six days just prior to November 13, 1894. The foreman, Salmon, had already been warned

by E. H. Bell as stated. Not only that, but before the passenger train got there, and while it was several blocks away, far enough away to have been flagged, Julius Lehman, watchman at the Lydia avenue crossing told Salmon, defendant's foreman, that plaintiff's passenger train 48 was then coming in on track number 1.

At 6:15 p. m. plaintiff's train 48 from St. Louis, loaded with passengers, came into Kansas City on track number 1 going about six or eight miles per hour. A collision resulted. The engine and postal car were injured, the Wisconsin Central car with its contents of corn was demolished. The plaintiff paid the receivers of the Wisconsin Central railroad for this car and paid the owner of the corn the value thereof.

Plaintiff's engineer did not see the obstruction on the track till he got too close to stop and prevent collision. It was dark, the obstructing train was partly on track number 1 and partly on track number 3, at the switch headed west. The hind end and greater number of cars were on track number 3.

Shortly after the collision the general superintendent of defendant appeared on the scene, admitted defendant's liability, furnished a watchman, gathered up the corn and put it in two Chicago & Alton cars, which were delivered to defendant November 16, 1894. Defendant kept this corn until December 4, 1894, and then put it in a transfer and returned it.

If the act of the defendant in placing the transfer car on plaintiff's track number 1—meeting track—was by authority, the plaintiff's action must fail; but if it was done without authority then there is liability, unless the act of the defendant in so placing the car was not the only and

RAILROADS: transfer train: trespass: evidence.

proximate cause of the subsequent collision and consequent injury. We fail to find anything in the evidence that directly or inferen-

tially justified the exercise of such authority by the defendant. If the trackage arrangement that was entered into between plaintiff and defendant in 1892, is relied upon by the latter as furnishing such authority this must fail it because there is evidence tending to prove that that arrangement was terminated in September, 1894. If reliance is had on the general custom of railroads in Kansas City, of the existence of which there was considerable evidence, as furnishing such authority this can not avail for the reason that it is conceded that the defendant did not protect the transfer car placed by it on plaintiff's track number 1, by flagging as required by such general custom. That custom enjoined upon defendant the duty to keep out of the way of passenger and freight trains of plaintiff. The defendant in going into the plaintiff's yards for transfers had no authority whatever to do so except that afforded by the general custom prevailing among Kansas City railroads, already referred to.

The private yards of the plaintiff, interlocked as they were with numerous side tracks, were maintained by it for the facilitation of its own transportation business; and if the defendant, under the authority conferred by such custom, moved its engines over any of the tracks of the plaintiff's railroad in such yards, it was bound, at its peril, to observe the conditions such custom imposed. It could not rightfully move its engines upon the plaintiff's tracks without complying with these conditions. A disregard of these conditions made its presence there wrongful. It owed the plaintiff the duty to keep out of the way of the movement of the plaintiff's trains on its meeting track number 1. Placing the transfer car on that track at the time when plaintiff's passenger train number 48 was about due, and leaving it there was an act in gross disregard of the requirement of one of the essential conditions upon which it was permitted to enter the plaintiff's yards. And this negligence on the part of

the defendant was emphasized by its failure to flag such transfer car while at rest on plaintiff's meeting track. Not only this, but at half past five on the evening of the collision the foreman of the plaintiff's switch crew, there in the yards, locked the switches and so informed the foreman of defendant's switch crew and also further informed him that he could not get his transfers until after seven o'clock that evening, as track number 1 had to be kept clear for the passenger trains that met there.

The cars on defendant's Suburban Belt Line had crossed the plaintiff's line sixteen hundred feet east of the point where the collision happened every thirty minutes for the thirty days just preceding the collision. During this period a great number of defendant's switch engines and transfers likewise passed over the crossing. From these facts we think the inference may be fairly indulged that the defendant was apprised of not only the fact that the plaintiff used track number 1 as a meeting track for its passing trains, but of the time its trains habitually used said meeting track.

We can come to no other conclusion than that the act of the defendant in placing its transfer car on the plaintiff's meeting track at the time it did so was that of the grossest negligence. It had no rightful authority to occupy the plaintiff's meeting track at that time and place. Its attitude there was not different from that of any other intruder or trespasser.

It would seem that the evidence is quite ample along these lines to carry the case to the jury unless it further discloses that the plaintiff itself is guilty of negligence and that such negligence was one of the proximate causes of the injury and contributing thereto. In the latter case it can not recover, even though defendant's negligence also contributed to it. The plaintiff can not recover unless the defendant's negligence is the only proximate cause of the injury.

Reed v. Railway, 50 Mo. App. 506; Bowman v. Railway, 85 Mo. 538; Karle v. Railway, 55 Mo. 476; Kelley v. Railway, 75 Mo. 142; Railway v. Moseley, 57 Fed. Rep. 921.

The defendant insists that the plaintiff, at the time of the collision, was running its train at a rate of speed that was in excess of that allowed by an ordinance of Kansas City, and that this was negligence *per se.* But suppose we concede this contention to the defendant, still this would not defeat a recovery unless such excessive speed was the proximate cause of the injury. Webb's Pollock on Torts, pp. 571, 573, 577 and 591. In respect to such negligence the relation of cause and effect must exist. Reed v. Railway, *ante.* Unless the injury is shown to have been caused by the speed exceeding that allowed by the ordinance the plaintiff was not guilty of contributory negligence. Karle v. Railway, *ante;* Kelley v. Railway, *ante.*

The undisputed evidence shows that the engineer in charge of the plaintiff's locomotive did not discover the presence of the defendant's transfer car on the track until he was in about thirty feet of it, which was not in time to stop his train and avoid the collision. Nor is there anything in the evidence tending to show that if the plaintiff's train had been running six miles an hour instead of eight, as was the case, that the result would have been different.

We may infer from certain facts which the evidence tends to show that if the plaintiff's engineer had been observing the greatest diligence, watchfulness and care in looking along the track ahead of his moving train, he could have seen the defendant's car in time to have averted the disaster. But did the plaintiff owe the defendant any such duty? This degree of vigilance and watchfulness is required of railway companies in running their engines and cars through the streets of populous cities and in passing over public crossings (Burger v. Railway, 112 Mo. 238;

Chamberlain v. Railway, 133 Mo. 587) but the rule is, we think, inapplicable to a case like this. The principle that the standard of due care and the existence of negligence depend upon the relation existing between the parties sought to be charged and the parties injured is elementary. The standard of negligence as between two railway companies in a case of this kind is quite different from that which obtains in suits by an injured passenger. Railway v. Railway, 60 Fed. Rep. 995.

The plaintiff had a right to presume that its meeting track was clear of obstructing trains. Ordinarily it is not negligence for one to act on the theory that another will comply with his duty unless there is some reason for thinking otherwise. Though the plaintiff knew that the defendant was in the habit of entering its yards under the custom already alluded to, yet it had no reason to think that the defendant would disregard the requirements of that custom in respect to flagging and keeping out of the way of the former's trains. The plaintiff owed the defendant no greater duty than that it owed any other intruder on its track at a place other than at a public crossing, or in the streets of a populous city or neighborhood, over or through which it ran its trains.

This case does not fall within the principle of the rule laid down in section 493 of Shearman & Redfield's work on negligence, and approvingly quoted by our supreme court in Williams v. Railway, 96 Mo. loc. cit. 281, which is to the effect that, "if common experience has shown that persons or cattle are constantly upon the track a recovery may be had for injuries by them through the neglect of the engineer to look after them, even if he did not see them," because here, the plaintiff had the right to have and the right to anticipate a clear track. In such case there can be no reason or justice in predicating a liability to one wrongfully on the track, on the ground that he might have been seen by the

exercise of ordinary care. There is no duty on the part of the company to watch for him. How can there be a liability for a failure to watch? The liability arises only from a breach of duty, and that does not require the company to be on the watch for trespassers. Williams v. Railway, *supra;* Rine v. Railway, 88 Mo. 392; Hallihan v. Railway, 71 Mo. 113.

It must be conceded that in view of the well settled law of this state, if the defendant was a trespasser on the plaintiff's track, as we think the evidence tends to prove was the case, the engineer of the plaintiff was only bound to exercise ordinary care to avoid injuring defendant after the discovery that the transfer car of the latter was on the track of the former. If the parties to this action were reversed and the defendant were suing plaintiff for injuries to its car, in consequence of the collision, the liability of the plaintiff in that case would be limited to negligence and want of care after the exposed and dangerous position of the defendant's car came to the knowledge of the plaintiff's engineer. The defendant being a trespasser, the plaintiff owed it no duty except not wantonly, willfully or with gross negligence to injure it. Barker v. Railway, 98 Mo. 51; Rine v. Railway, 88 Mo. 392; Yarnall v. Railway, 75 Mo. 583; Langan v. Railway, 72 Mo. 398; Maher v. Railway, 64 Mo. 267; Zimmerman v. Railway, 71 Mo. 477; Maloy v. Railway, 84 Mo. 270; Williams v. Railway, 96 Mo. 275. And no reason is perceived why this rule may not be appropriately invoked and applied in the present case.

It was the duty of the jury to ascertain when the position of the defendant's car was discovered by plaintiff's engineer to be on its track in front of his engine; how far the engine was then from it; within what time and space the engine could have been stopped after the discovery of the defendant's car; what means the engineer used to check or stop the train, and what success attended his efforts in that

direction. These issues of fact, in view of the contradictory evidence, were for the jury and not for the court to determine. Reardon v. Railway, 114 Mo. 384.

We do not think the rule quoted from Graney v. Railway, 140 Mo. 89, and relied on by defendant, that proof of negligence and of injury directly resulting therefrom makes *prima facie* (not conclusive. Elliott on Railroads, section 1214), a case for damages, can have any application to a case like this. The two cases are dissimilar in their essential facts. In that case the undisputed evidence showed that if the train had been running at no greater speed than that allowed by the ordinance the injury would not have happened, so that the direct cause of the injury was the negligence in running the train at a prohibited rate of speed. In this case it was not shown that had the train been running at a rate of speed not in excess of that allowed by the ordinance that the collision would not have occurred. Elliott on Railways, sec. 1204; Wharton on Negligence [2 Ed.], sec. 303. Nor are any facts shown in evidence from which this fact could be inferred. Had the train been moving at six miles an hour, instead of eight, the result would doubtless have been just the same. We think the evidence fairly authorized the inference that it was quite impossible for the plaintiff's engineer, after he discovered the presence of the defendant's transfer car on the track, to have averted the collision and this, whether the speed of the train was either one rate or the other. It can not therefore be said that the injury complained of was the direct result of the negligence of the plaintiff. The case was, we think, one for the jury, and that there was no error committed by the court in denying the defendant's demurrer to the evidence.

The defendant objects that the trial court further erred in instructing the jury, at the instance of the plaintiff,

to the effect that if it found from the evidence that R. L. Crawford & Company, as the shipper, delivered at Lowry City two cars of corn to the Kansas City, Osceola & Southern Railway Company, consigned to the shipper's order, notify the Davenport Syrup Refining Company, at Davenport, Iowa, and that such car was loaded in car number 11,083 and car number 8,064, and billed to stop at Blairstown and have the corn shelled and that said cars were by said railroad company transported to Blairstown, and that the corn was there shelled and reloaded in said car 8,064, and that said Osceola & Southern Railway Company delivered said car of corn to plaintiff in said Alton Elevator yard, and that it was to be by it transferred and delivered to the Chicago, Rock Island & Pacific Railroad Company, for further shipment to Davenport, Iowa, and that said car of corn was on November 13, 1894, in said Alton Elevator yard in process of delivery by plaintiff to said Rock Island Railroad Company, for further shipment to Davenport, Iowa, and that said switching crew of defendant took said car of corn and put it in its transfer train, and that the same was damaged, and that said car and contents were damaged in such collision, and that plaintiff paid the value of said corn to the owner thereof, then the verdict should also be for the plaintiff on the third court of the petition, and the jury should allow as damages on said third count not to exceed $242.13 as the net damage to car 8,064, and should also allow the difference in the market value of said corn in said car at Kansas City, immediately before, and its market value just after the collision, caused by the collision, not exceeding $210.76, the total damage under the third count not to exceed $452.89.

*—: bailments: bailee's right of action: instruction: damages.*

There was sufficient evidence adduced to justify the giving of this instruction. It asserted, as we think, a correct rule of law applicable to the facts it hypothesizes. The

plaintiff was a bailee of the car load of corn at the time it was injured and as such had a qualified property therein. It could maintain an action for the injury against defendant. In such case either the general owner or the bailee may sue for and recover the damages resulting from the injury. A recovery of damages by either would be full satisfaction which could be pleaded in bar of any subsequent suit by the other. Story on Bailments [9 Ed.], sec. 93; Addison on Torts [Wood's Ed.], secs. 631, 1292; 3 Wood's Railway Law, sec. 451; Railway v. Kenney, 41 Mo. 271.

The defendant further objects that the trial court further erred in giving the plaintiff's second instruction, which told the jury, in substance, that even if the plaintiff's train was running at a greater speed than six miles an hour that this was no defense, unless the running of such train directly contributed to the cause of the collision. It was not erroneous in enunciation. Contributory negligence, debarring the plaintiff's right of recovery, exists only in those cases where the negligence of the plaintiff contributed proximately to the injury sued for. It does not exist where such injury and that resulting from the fault of the plaintiff are disconnected. But as the question raised by this instruction has already been sufficiently noticed, nothing further need be added here.

*—: violation of ordinance: contributory negligence: instruction.*

In the motion for a new trial defendant did not allege that the court had erred in its action refusing defendant's ninth instruction and in giving it in the modified form, and therefore the same is not before us for review.

Perceiving no error in the record prejudicial to the defendant on the merits, the judgment must be affirmed. All concur.